14-2265-cv
*Vega v. Hempstead Union Free School District, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2014

(Submitted: February 25, 2015      Decided:  September 2, 2015)

Docket No. 14-2265-cv

CARLOS VEGA,

*Plaintiff-Appellant,*
v.

HEMPSTEAD UNION FREE SCHOOL DISTRICT and CHY DAVIDSON and DAGOBERTO
ARTILES (sued in their individual capacities pursuant to 42 U.S.C. § 1983),

*Defendants-Appellees.*[*]

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Before:
        KATZMANN, *Chief Judge*, and WALKER and CHIN, *Circuit Judges*.

---

[*]        The Clerk of the Court is directed to amend the caption to conform to the above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*) dismissing plaintiff-appellant's employment discrimination and retaliation claims. The district court granted defendants-appellees' motion for judgment on the pleadings, holding that (1) certain claims were time-barred, (2) claims of retaliation for complaining of discrimination are not actionable under 42 U.S.C. § 1983, (3) plaintiff-appellant had not "demonstrated that he suffered an adverse employment action" and therefore he had not "established a prima facie case of discrimination," and (4) plaintiff-appellant had failed, with respect to his retaliation claims, "to establish an adverse action taken against him" or "a connection between the alleged retaliatory acts and his ethnicity."

VACATED AND REMANDED.

Kathleen A. Tirelli, Scott Michael Mishkin, P.C., Islandia, New York, *for Plaintiff-Appellant.*

David F. Kwee, Ingerman Smith, L.L.P., Hauppauge, New York, *for Defendants-Appellees.*

CHIN, *Circuit Judge*:

In this case, Carlos Vega, a high school math teacher in the Hempstead Union Free School District (the "District"), brings discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1983 against the District and two principals, Chy Davidson and Dagoberto Artiles, in their individual capacities (collectively "Defendants"). Vega alleges that Defendants discriminated against him because of his "Hispanic ethnicity" and that they retaliated against him after he complained of discrimination.

The district court (Feuerstein, *J.*) granted Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), concluding that (1) certain claims were time-barred, (2) claims of retaliation for complaining of discrimination are not actionable under § 1983, (3) Vega had not "demonstrated that he suffered an adverse employment action" and therefore he had not "established a prima facie case of discrimination," and (4) Vega had failed, with respect to his claims of retaliation, "to establish an adverse action taken against him" or "a connection between the alleged retaliatory acts and his ethnicity." We hold that: (1) certain of Vega's claims were not time-barred, as the

- 3 -

district court had concluded; (2) retaliation claims are actionable under § 1983; (3) a Title VII plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss; and (4) Vega has sufficiently pleaded discrimination and retaliation claims. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

*STATEMENT OF THE CASE*

**A.** *The Facts*

The facts alleged in the complaint are assumed to be true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)). They may be summarized as follows:

The District operates seven elementary schools, one middle school, and one high school (the "High School") in Hempstead, New York. As of the filing of his complaint, Vega had taught math for twenty-four years, including the last sixteen years in the District at the High School. Vega is Hispanic, of Puerto Rican origin, and is fluent in both English and Spanish. Vega received

tenure in the District in 1999, and for many years he received positive performance reviews and consistent pay increases.

Davidson was the principal at the High School from 2006 to 2011, and Artiles has been a principal at the High School since 2011. During their employment in the District, Davidson and Artiles were responsible for personnel decisions at the High School, including hiring, firing, evaluating, and disciplining employees.

**1.** *The Alleged Discrimination*

Beginning in 2008, the District took a number of actions that Vega contends were discriminatory:

- Beginning in 2008, Vega was assigned an "increased percentage of students that were Spanish speaking and were not fluent in English," requiring Vega to do "twice as much work" in preparing and teaching his classes first in English and then in Spanish, without extra compensation. App. at 11-12.[1]

- When he complained later in 2008, Vega was assigned "a mixture of bilingual classes and English classes, instead of all bilingual," and he was still not compensated for the extra preparation time. *Id.* at 12.

- Vega was unable to use his regular classroom for his first period class in October 2010 and had to teach in the "excessively noisy" media center without a blackboard. *Id.*

---

[1] The District's policy provided that teachers were not to be assigned more than three class preparations per semester. Vega was effectively assigned more than three preparations per semester, as he had to prepare his lessons in both Spanish and English.

- Vega was assigned a classroom with a "University of Puerto Rico" banner above the door. *Id.* at 14-15.

- Vega attempted to enter his students' grades into the school's computer system in October 2011, but his password had been deactivated. Vega had to use his non-Hispanic colleague's password to log into the computer system to enter his grades.

- The District twice attempted to transfer Vega out of the High School:

  - First, on June 24, 2011, Davidson attempted to transfer Vega to the District's middle school. On July 11, 2011, Vega objected to Davidson's proposed transfer and told the Assistant Superintendent that he should not be transferred because he had a better percentage of passing students than most of his co-workers. On September 21, 2001, the District rescinded the transfer and Vega continued teaching at the High School.

  - Second, on June 18, 2012, Vega received a letter from the District approving his transfer to the Academy of Math and Sciences -- whose principal is Hispanic -- even though he had never requested this transfer. Vega was never transferred.

Vega alleges that his non-Hispanic colleagues were not subjected to such actions.

### 2. *The Alleged Retaliation*

On August 8, 2011, Vega filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging that the District had discriminated against him based on his ethnicity in violation of Title VII. Vega amended the charge twice, first on January 4, 2012 and then on July 2, 2012, adding further allegations of discrimination.

After Vega filed his initial charge, and, in some instances, the amended charges, Defendants engaged in a number of actions that Vega alleges were retaliatory:

- For the 2011-12 school year, Vega "was assigned classes with students who [were] notoriously excessively absent." *Id.* at 16. Before 2011, consistently roughly 20% of Vega's students were excessively absent, but during the 2011-12 school year, that number jumped to 75%. Chronic absence leads to poor student performance, which in turn reflects poorly on a teacher's performance.

- The District changed the curriculum for one of Vega's classes in November 2011. The District notified all non-Hispanic teachers of the curriculum change, but it did not notify Vega.

- On March 12, 2012, $738.92 was improperly deducted from Vega's paycheck for sick time, even though he had leftover sick time in his "sick day bank." *Id.* at 17. Vega complained to the District's Business Office, which acknowledged the mistake, and while he was repaid a portion of the deducted amount in September, he was never repaid the full amount that was due to him.

- In February 2013, Vega received his first negative performance review in his sixteen years teaching at the High School. Artiles observed Vega's classroom performance and gave him 1.4 out of a 4-point maximum in his review. Vega was held to a different evaluation process than his colleagues, and he was the only teacher to receive a negative performance score during the evaluation period.[2]

---

[2] The District's deactivation of Vega's computer password took place in October 2011 and its attempt to transfer him to the Academy of Math and Science took place in June 2012, both after Vega filed his initial charge with the EEOC in August 2011. Nonetheless, he does not allege that either action was retaliatory.

**B.**    *Proceedings Below*

On September 21, 2012, the EEOC dismissed Vega's charge and issued him a right to sue notice. Vega commenced this action below, filing a *pro se* complaint on December 14, 2012. With the assistance of counsel, he filed an amended complaint (the "Complaint") on April 3, 2013. The Complaint alleges discriminatory and retaliatory treatment in violation of Title VII and 42 U.S.C. § 1983.

Defendants moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. On May 22, 2014, the district court granted Defendants' motion and dismissed the Complaint in its entirety. *Vega v. Hempstead Union Free Sch. Dist.*, No. 12-CV-6158 (SJF), 2014 WL 2157536 (E.D.N.Y. May 22, 2014).

As an initial matter, in a footnote, the district court dismissed certain of Vega's claims -- without specifying which -- under both Title VII and § 1983 as time-barred. *Id.* at *2 n.1. The district court then addressed the discrimination claims against the District, concluding, after reviewing the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), that "[b]ecause plaintiff has not demonstrated that he suffered an adverse

employment action, he has not established a prima facie case of discrimination and consequently, his Title VII and § 1983 claims against the District must fail." *Vega*, 2014 WL 2157536, at *6. Next, the district court dismissed the § 1983 claims against Davidson and Artiles, holding, with respect to Davidson, that Vega had not "established" an adverse employment action or that Davidson's conduct was "on account of [Vega's] ethnicity," *id.* at *7, and, with respect to Artiles, that a retaliation claim could not be brought under the Fourteenth Amendment (or § 1983) when the protected activity involved race discrimination, *id.* at *8.[3] Finally, the district court dismissed the Title VII retaliation claims against the District on the grounds that Vega had failed "to establish an adverse action taken against him for filing the [EEOC] charge" and because of "the lack of a connection between the alleged retaliatory acts and his ethnicity." *Id.* at *9.

Judgment was entered on May 28, 2014. This appeal followed.

## DISCUSSION

We review *de novo* a district court's decision to grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In deciding Rule 12(c)

---

[3] The district court also dismissed claims against Davidson and Artiles in their "official capacities," *Vega*, 2014 WL 2157536, at *6, but no such claims are alleged in the Complaint.

motions, we employ the same standard applicable to Rule 12(b)(6) motions to dismiss, "accept[ing] all factual allegations in the [C]omplaint as true and draw[ing] all reasonable inferences in [the nonmoving party's] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (second alteration in original) (internal quotation marks omitted).

We address (a) the timeliness of Vega's claims; (b) the viability of retaliation claims under § 1983; (c) the sufficiency of the pleading of the discrimination claims; and (d) the sufficiency of the pleading of the retaliation claims.

**A.** *Timeliness of Claims*

**1.** *Applicable Law*

Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court made clear that the word "practice" in this context refers to "a discrete act or single 'occurrence,'" and that "a discrete retaliatory or discriminatory act

- 10 -

'occurred' on the day that it 'happened.'" 536 U.S. 101, 110-11 (2002). Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. At the same time, however, identifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination or retaliation that began outside the statutory period: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. Accordingly, claims tied to discrete acts in an ongoing adverse employment action that occurred within the statute of limitations period are not time-barred.[4]

Claims under § 1983 are governed by a three-year statute of limitations in New York. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) ("In section 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions, and the parties agree that in this case that period is three years." (alterations omitted)

---

[4] While the continuing violation doctrine is recognized in certain circumstances under Title VII, Vega did not allege it here. *See Washington v. Cty. of Rockland*, 373 F.3d 310, 317-18 (2d Cir. 2004).

(citation omitted) (internal quotation marks omitted) (citing N.Y. C.P.L.R. § 214(5))). Hence, a plaintiff asserting a claim of discrimination under § 1983 must file suit within three years of the adverse employment action. The considerations set forth by the Supreme Court in *National Railroad* apply to § 1983 employment claims as well. *See, e.g.*, *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (citing *National Railroad* and affirming dismissal of § 1983 employment discrimination claims as, *inter alia*, untimely).

**2.**   *Application*

Without specifying the claims at issue, the district court held that "any events which occurred prior to October 12, 2010 are time-barred with respect to his Title VII claim," and that "any allegations in support of his § 1983 claim which precede December 14, 2009 are time-barred." *Vega*, 2014 WL 2157536, at *2 n.1.

Although the district court properly determined that discrete acts occurring before October 12, 2010 were time-barred under Title VII and discrete acts occurring before December 14, 2009 were time-barred under § 1983, it appears that the district court dismissed as time-barred Vega's claim that he was assigned a disproportionate amount of work on a discriminatory basis. In fact,

the Complaint alleges that in or about 2008, Vega "began to be assigned classes with an increased percentage of students that were Spanish speaking and were not fluent in English," resulting in "twice as much work" for him. App. at 11. The Complaint further alleges that when he complained in 2008, Vega was assigned "a mixture of bilingual classes and English classes, instead of all bilingual." *Id.* at 12. Yet, the district court did not discuss the disproportionate work claims in its analysis of the sufficiency of Vega's claims.

To the extent that Vega contends that he was assigned extra work on a discriminatory or retaliatory basis after December 14, 2009 with respect to his § 1983 claims and after October 12, 2010 with respect to his Title VII claims, the claims are not untimely. To the extent he received extra work on a discriminatory or retaliatory basis after these dates, the assignments were discrete acts that occurred within the limitations periods. In fact, Vega appears to allege later such assignments, as the Complaint alleges that in or about 2008 he "*began* to be assigned classes" with more Spanish-speaking students. *Id.* at 11 (emphasis added). While the Complaint is not precise in terms of dates, it seems to suggest an ongoing practice. Moreover, in his original *pro se* complaint, Vega alleges that Defendants are "*still* committing these acts against me." *Id.* at 23

- 13 -

(emphasis added); *see also id.* at 24 ("The Hempstead Union Free School District wanted to force me to teach only the Hispanic student math population at Hempstead High School. When I showed that I was against it because it was discriminatory, they retaliated and *continue* to do so whenever they get a chance." (emphasis added)).

Accordingly, to the extent that Vega alleges he was given a disproportionate amount of work on a discriminatory or retaliatory basis after the relevant dates, the claims are not time-barred, as "[e]ach incident of discrimination [or retaliation] . . . constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114.[5]

## B.    *Viability of Retaliation Claims Under § 1983*

The district court dismissed Vega's retaliation claims against Artiles, holding that "[t]here is no authority for a retaliation claim under the Fourteenth

---

[5]    Defendants argue that Vega failed to preserve his disproportionate workload claim. We disagree. In both his opposition to the motion for judgment on the pleadings below and his opening brief on appeal, Vega argued that "since on or about 2008, *and continuing currently*, Plaintiff has been assigned classes that are increasingly comprised of students that do not speak English." *Vega v. Hempstead Union Free Sch. Dist.*, 12-CV-6158, ECF Doc. No. 23 ("Vega Opp. to MJP"), at 2 (emphasis added); *accord* Appellant's Br. at 10. In his opposition to the motion for judgment on the pleadings, he added, "[a]s pled, Plaintiff's complaint timely and properly alleges that Plaintiff was denied a classroom to teach in in October 2010. After this event, all of the events that were alleged in Plaintiff's complaint, followed in time, up to and including the negative evaluation Plaintiff received from Artiles, in February 2013." Vega Opp. to MJP, at 6.

Amendment when the protected activity is a complaint of race or age discrimination." *Vega*, 2014 WL 2157536, at *8 (quoting *Roberts v. Judicial Dep't*, No. 99-CV-014(RNC), 2001 WL 777481, at *4 (D. Conn. Mar. 28, 2001)) (internal quotation marks omitted). We acknowledge that there has been considerable confusion surrounding the viability of retaliation claims under § 1983, and we now clarify that retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983.

Section 1983 does not explicitly address retaliation claims, and it is not apparent from the language of § 1983 alone whether an employment retaliation claim tied to a "deprivation of any rights, privileges, or immunities" under the Equal Protection Clause of the Fourteenth Amendment is actionable under the statute. *See* 42 U.S.C. § 1983. We have sent conflicting signals in this respect. In *Bernheim v. Litt*, on which the district court relied, we observed that "we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." 79 F.3d 318, 323 (2d Cir. 1996). We declined "to break new constitutional ground" in that case, reasoning that retaliation claims based on complaints of racial discrimination can be brought under Title VII, which the plaintiff had chosen not

to invoke.  *Id.*  We dismissed the plaintiff's retaliation claims brought under the Equal Protection Clause and § 1983.  *Id.*  Thereafter, district courts in our Circuit relied on *Bernheim* to dismiss claims of retaliation based on adverse action taken after a complaint of discrimination.  *See, e.g.*, *Worthington v. Cty. of Suffolk*, No. 02-CV-723(DLI)(ARL), 2007 WL 2115038, at \*2 (E.D.N.Y. July 20, 2007); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 419-20 (S.D.N.Y. 2002).

In 2010, however, in *Hicks v. Baines*, we permitted retaliation claims brought by state employees to proceed under § 1983, even though the adverse treatment was allegedly in retaliation for their participation in discrimination investigations and proceedings.  593 F.3d 159, 171 (2d Cir. 2010).  We explained:

> [The defendant] argues that plaintiffs' § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment should be dismissed for failure to offer evidence that they were treated differently than employees who were similarly situated.  It is certainly true that our case law requires a plaintiff seeking relief pursuant to the Equal Protection Clause to "show they were selectively treated compared with other similarly situated employees, and that selective treatment was based on impermissible considerations such as race, [or] religion." . . .  The premise of this lawsuit is that plaintiffs were treated differently -- that is, they suffered retaliation -- on the basis of their participation in discrimination investigations and proceedings.  That participation obviously constitutes an "impermissible" reason to treat an employee differently.

*Id.* at 171 (second alteration in original) (citation omitted).

- 16 -

In *Hicks* we did not discuss or cite *Bernheim*.[6] District courts in our Circuit have noted that "[t]his discrepancy in the Second Circuit's case law remains unresolved." *See, e.g.*, *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 405 (S.D.N.Y. 2014); *accord Cowan v. City of Mount Vernon*, No. 12-CV-6881(KMK), 2015 WL 1400088, at *16 (S.D.N.Y. Mar. 27, 2015).

We conclude that a claim of retaliation for a complaint that alleged discrimination is actionable under § 1983 for the following reasons.

First, our decision in *Hicks* squarely recognized that an employer's retaliatory action in response to an employee's participation in discrimination investigations and proceedings constituted an "'impermissible' reason to treat an employee differently" for purposes of the Equal Protection Clause. 593 F.3d at 171 (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 166 (2d Cir. 2001)); *see also Giscombe*, 39 F. Supp. 3d at 405 (recognizing *Hicks* as "allow[ing] a § 1983 retaliation claim to proceed on an equal protection theory"). In *Bernheim*, we did not directly address the question because we were reluctant to "break new

_____

[6] Additionally, in a recent non-precedential decision, we relied on *Hicks* (again without discussing or citing *Bernheim*) for the proposition that a plaintiff can bring a retaliation claim under § 1983 based on an equal protection theory. *Lewis v. City of Norwalk*, 562 F. App'x 25, 29 & n.5 (2d Cir. 2014) (summary order) ("To succeed on a retaliation claim under Title VII or § 1983, the plaintiff bears the initial burden of establishing a *prima facie* case by showing [retaliation for complaining about discriminatory conduct] . . . ." (citing *Hicks*, 593 F.3d at 164)).

constitutional ground" when there was an apparent remedy for relief under Title VII. 79 F.3d at 323. In fact, however, Title VII did not provide a means for relief in that case because the claims were against the individual supervisor, the principal of the school where the plaintiff was a teacher. *Id.* at 321; *see Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII."). Hence, *Bernheim* was decided on the basis of an incorrect premise.

Second, we have recognized that once the color of state law requirement is met, except for the issue of individual liability, an "equal protection claim parallels [a plaintiff's] Title VII claim." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). There is no sound reason to deviate from this principle for a retaliation claim, when the retaliatory action is taken because a plaintiff complains of or otherwise opposes discrimination.

Third, more substantively, retaliation is a form of discrimination. As the Supreme Court recognized in the Title IX context:

> Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment.

> Moreover, retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX.

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005) (citations omitted).

This reasoning applies with equal force to the employment context. When a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause.

Accordingly, we hold that a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment. Hence, the district court erred in dismissing Vega's § 1983 retaliation claim against Artiles on the ground that no such claim was available under § 1983.

C. *Pleading of Discrimination Claims*

The district court's decision raises the following issues with respect to the pleading of the discrimination claims: (1) the applicability of *McDonnell*

- 19 -

*Douglas* at the pleading stage; (2) the pleading standards for discrimination claims; and (3) the application of the proper pleading standards in this case.

**1.** *The Applicability of* **McDonnell Douglas**

In 1973, the Supreme Court adopted a three-stage, burden-shifting framework for analyzing employment discrimination cases under Title VII where a plaintiff alleges disparate treatment but does not have direct evidence of discrimination. *McDonnell Douglas*, 411 U.S. 792. Under the test, a plaintiff must first establish a *prima facie* case of discrimination by showing that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a plaintiff has established a *prima facie* case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to

prove that the employer's reason "was in fact pretext" for discrimination. *Id.* at 804; *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) ("If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action.").

In 2002, the Supreme Court held in *Swierkiewicz v. Sorema N.A.* that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" at the motion to dismiss stage. 534 U.S. 506, 515 (2002). The Court ruled that the "prima facie case" requirement of *McDonnell Douglas* applied only at the summary judgment phase because it "is an evidentiary standard, not a pleading requirement." *Id.* at 510. As the Court explained, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511. "Moreover, the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 512 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

In *Swierkiewicz*, the Court relied in part on the long-used minimal pleading standard adopted in *Conley v. Gibson*, 355 U.S. 41 (1957). *See*

*Swierkiewicz*, 534 U.S. at 512-14. In *Iqbal* and *Twombly*, however, the Court abandoned *Conley*'s "no set of facts" test and adopted instead a plausibility standard of pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 669-70 (2009); *Twombly*, 550 U.S. at 562-63. As a consequence, a question arose as to the continued viability of *Swierkiewicz*. *See, e.g., Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 & n.10 (2d Cir. 2014) (noting suggestion that question was not "entirely settled" and declining to decide whether, after *Twombly*, Title VII plaintiff was required to plead facts sufficient to establish *prima facie* case under *McDonnell Douglas*); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (questioning continued vitality of *Swierkiewicz*).

In *EEOC v. Port Authority of New York & New Jersey*, we answered the question in a different context. 768 F.3d 247 (2d Cir. 2014). We held as follows:

> [U]ncertainty lingered as to whether *Twombly* and *Iqbal* overruled *Swierkiewicz* entirely, or whether *Swierkiewicz* survives only to the extent that it bars the application of a pleading standard to discrimination claims that is heightened beyond *Twombly*'s and *Iqbal*'s demand for facial plausibility. We reject the first proposition. *Twombly*'s endorsement of *Swierkiewicz* mandates, at a minimum, that *Swierkiewicz*'s rejection of a heightened pleading standard in discrimination cases remains valid.
>
> . . . [W]e conclude that, while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to

- 22 -

> dismiss, *see Swierkiewicz,* 534 U.S. at 510 (noting that the prima facie case requirement is an evidentiary standard), it must at a minimum assert nonconclusory factual matter sufficient to "'nudge[ ] [its] claims' . . . 'across the line from conceivable to plausible'" to proceed, *Iqbal,* 556 U.S. at 680 (quoting *Twombly,* 550 U.S. at 570).

*Id.* at 254 (alterations in original) (citation omitted). As we recently noted, *EEOC v. Port Authority* was an Equal Pay Act case and not a Title VII case. *Littlejohn v. City of New York,* No. 14-1395-cv, 2015 WL 4604250, at *6 n.7 (2d Cir. Aug. 3, 2015). Nonetheless, the language quoted above from *EEOC v. Port Authority* is broad, and if *Swierkiewicz* survives for Equal Pay Act cases it surely survives for Title VII cases.

More importantly, our decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss. Rather, because "a temporary 'presumption' of discriminatory motivation" is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

at *4, 8 (referring "to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation").[7]

Accordingly, here, the district court erred when it granted Defendants' motion for judgment on the pleadings on the grounds that Vega had "not established a prima facie case of discrimination." *Vega*, 2014 WL 2157536, at *6. At the pleadings stage of the litigation, Vega was not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework. *See Littlejohn*, 2015 WL 4604250, at *8 (referring to "the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation"). We hold that the district court held Vega to the wrong pleading standards.[8]

---

[7] The district court's decision was filed before our ruling in *EEOC v. Port Authority*, and, of course, before our ruling in *Littlejohn*. Nonetheless, the district court did not discuss *Swierkiewicz* or acknowledge that there was a question as to its continued vitality. On appeal, Defendants continue to argue that the district court was correct in requiring Vega to plead a *prima facie* case, still suggesting that *Swierkiewicz* has been "discredited" in this respect. To be clear, we do not hold that a plaintiff in a Title VII case may *not* rely on the *McDonnell Douglas* formulation in pleading a claim of discrimination; we simply hold that a plaintiff is not *required* to do so. *See, e.g.*, *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("[T]he elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.").

[8] To compound the problem, the district court held that Vega had to "demonstrate[]" an adverse employment action and that he had to "establish[]" a *prima facie* case of discrimination. *Vega*, 2014 WL 2157536, at *6. Of course, at the pleading stage, Vega was not required to "demonstrate" or "establish" discrimination; he was required only to *plead* a claim

### 2. *Pleading Standards for Discrimination Claims*

We turn to the question of what a plaintiff must plead in an employment discrimination case to state a claim upon which relief may be granted.

#### a. *Title VII*

In *Littlejohn*, we held that at the pleadings stage of an employment discrimination case, a plaintiff has a "*minimal* burden" of alleging facts "suggesting an inference of discriminatory motivation." 2015 WL 4604250, at *7. While we made clear that *Iqbal* applies to employment discrimination cases, we also clarified that *Iqbal*'s plausibility requirement "does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet." *Id*. We ruled nonetheless that the facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at *8. The question remains what a plaintiff must allege to meet this minimal burden.

The starting point is the statute. *See Iqbal*, 556 U.S. at 675 ("[W]e begin by taking note of the elements a plaintiff must plead to state a claim . . . .").

_____

upon which relief could be granted. *See, e.g., Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin. *Id.*

As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a

particular situation." *Id.* (alteration omitted) (internal quotation marks omitted).

We have held that the assignment of "a disproportionately heavy workload" can

constitute an adverse employment action. *Feingold*, 366 F.3d at 152-53.

As to the second element, an action is "because of" a plaintiff's race,

color, religion, sex, or national origin where it was a "substantial" or "motivating"

factor contributing to the employer's decision to take the action. *See Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion), *superseded on*

*other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat.

1071; *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) ("[A] plaintiff need only

present sufficient evidence for a reasonable jury to conclude, by a preponderance

of the evidence, that 'race, color, religion, sex, or national origin was *a motivating*

*factor* for any employment practice.'" (emphasis added) (quoting 42 U.S.C.

§ 2000e-2(m)). While the Supreme Court has held that a plaintiff alleging age

discrimination under the Age Discrimination in Employment Act must allege

"that age was the 'but-for' cause of the employer's adverse action," *Gross v. FBL*

*Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009), the "motivating factor" standard still

applies to discrimination claims based on race, color, religion, sex, or national

origin, *see Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.2 (2d Cir. 2009) ("Title VII,

on the other hand, does authorize a 'mixed motive' discrimination claim."). Hence, a plaintiff in a Title VII case need not allege "but-for" causation.

Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.

The question remains as to what "plausibility" means in the context of employment discrimination claims. Several considerations guide the inquiry.

First, as the Supreme Court explained in *Iqbal*, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. At the same time, the court must assume the factual allegations in the complaint to be true, "even if [they are] doubtful in fact," *id.*, and a complaint may not be dismissed "based on a judge's disbelief of a complaint's factual allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . .").

Second, in making the plausibility determination, the court is to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Of course, the court must proceed at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decisionmaking.[9] In making the plausibility determination, the court must be mindful of the "elusive" nature of intentional discrimination. *See Burdine*, 450 U.S. at 255 n.8. As we have recognized, "clever men may easily conceal their motivations." *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d Cir. 1979) (internal quotation marks omitted). Because discrimination claims implicate an employer's usually unstated intent and state of mind, *see Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), rarely is there "direct, smoking gun, evidence of discrimination," *Richards v. N.Y.C. Bd. of Educ.*, 668 F. Supp. 259, 265 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1288 (2d Cir. 1988). Instead, plaintiffs usually must rely on "bits and pieces" of information to support an inference of discrimination, *i.e.*, a "mosaic" of intentional discrimination. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1988). Again, as we made clear in *Littlejohn*, at the initial stage of a litigation, the

---

[9] In the case at hand, we do not question the district court's fairness in approaching its work.

plaintiff's burden is "minimal" -- he need only plausibly allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  2015 WL 4604250, at *8.

Finally, courts must remember that "[t]he plausibility standard is not akin to a 'probability requirement.'"  *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage . . . ."); *Littlejohn*, 2015 WL 4604250, at *7.  On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678-80.

Accordingly, to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.  As we have long recognized, the "'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that

- 30 -

the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997)). A plaintiff can meet that burden through direct evidence of intent to discriminate, *see, e.g.*, *Stratton*, 132 F.3d at 878 & n.4, or by indirectly showing circumstances giving rise to an inference of discrimination, *see, e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 436-37 (2d Cir. 2015). A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, *see, e.g.*, *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075 (1998), or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination, *Gallagher*, 139 F.3d at 342. At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See*

*Littlejohn*, 2015 WL 4604250, at *7 (requiring facts "suggesting an inference of discriminatory motivation").

**b.**    *Section 1983*

The Fourteenth Amendment provides public employees with the right to be "free from discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting under color of state law." *Feingold*, 366 F.3d at 159 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (internal quotation marks omitted). A state employee acting in his official capacity is acting "under color of state law." *Id.*

Once the color of law requirement is met, a plaintiff's "equal protection claim parallels his Title VII claim," except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual. *Id.* Thus, for a § 1983

discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim -- and that the adverse action was taken by someone acting "under color of state law."

3.    *Application*

We conclude that Vega pleaded a plausible discrimination claim under Title VII and § 1983, based on his allegation that the District assigned him classes with higher numbers of Spanish-speaking students and, in doing so, assigned him a disproportionate workload.  None of Vega's other claims plausibly state a claim on their own, but they help create context for his discrimination claim.

Vega has plausibly alleged that his assignment to classes with increased numbers of Spanish-speaking students was an "adverse employment action" taken "because of" his Hispanic ethnicity.  First, Vega alleges that he was forced to spend disproportionately more time preparing for his classes and therefore experienced a material increase in his responsibilities without additional compensation.  He contends that these assignments required him to do "twice as much work" and that he was assigned class preparations on a basis

that exceed "District policy." App. at 11. We have previously held that the assignment of "an excessive workload" as a result of "discriminatory intent," *Feingold*, 366 F.3d at 153, can be an adverse employment action because it is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Terry*, 336 F.3d at 138 (internal quotation marks omitted). Vega has thus plausibly alleged an adverse employment action.

Second, Vega has also plausibly alleged that the adverse action was taken "because of" his Hispanic ethnicity, that is, that his Hispanic ethnicity was a motivating factor in the employment decisions. He contends that he was assigned a large percentage of Spanish-speaking students because he is Hispanic and bilingual, while his similarly-situated co-workers were not assigned additional work. Vega's other allegations of discrimination, even if they do not independently constitute adverse employment actions, provide "relevant background evidence" by shedding light on Defendant's motivation and thus bolster his claim that Defendants treated him differently because of his ethnicity. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 112 (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)) (internal quotation marks omitted); *Washington v. Davis*, 426 U.S. 229, 242 (1976) (holding that "an invidious discriminatory purpose

may often be inferred from the totality of the relevant facts").[10]  For example, the District placed a "University of Puerto Rico" banner outside his classroom and attempted to transfer him to a Hispanic principal's school.  These actions are plausibly connected to Vega's Hispanic background and therefore provide a contextual basis for inferring discrimination.  Vega has thus plausibly alleged that his Hispanic background was a "motivating factor" contributing to his being assigned extra work.  *See Raniola v. Bratton*, 243 F.3d 610, 628 (2d Cir. 2001).

The District may contend that Vega was assigned a disproportionate number of Spanish-speaking students solely because of his language ability, and not because of his Hispanic background, but these competing explanations are better evaluated at the summary judgment stage or beyond, and not on a motion for judgment on the pleadings.  *See, e.g.*, *Brown*, 756 F.3d at 230 ("That there may be other explanations for [a defendant's] employment decisions does not render [a plaintiff's] allegations of discrimination inadequate as a matter of law.").

---

[10]     Some of these actions could also be relevant to a hostile environment claim, as Title VII's prohibition on discrimination covers more than "economic" or "tangible discrimination" and more than the "terms and conditions" of employment in the "narrow contractual sense." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115-16 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), and *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)) (internal quotation marks omitted).  But no such claim has been asserted in this case.

Finally, the parties do not dispute that Defendants' actions are "under color of state law" as Davidson and Artiles are employees of a public school. The Complaint alleges that Davidson and Artiles "acting under color of state law . . . violated his constitutional rights." App. at 19. Because the Complaint also alleges that Davidson and Artiles each had "input into personnel decisions at [the High School] including hiring, firing, evaluations and discipline of employees," *id.* at 9-10, Vega has plausibly alleged state action for the purposes of § 1983.

Accordingly, the Complaint plausibly pleads under both Title VII and § 1983 that Defendants discriminated against Vega by assigning him, on or after the time-bar dates, to classes that required additional preparation because they had large numbers of Spanish-speaking students.

Vega's other allegations of discrimination do not plausibly state a claim for relief under Title VII or § 1983. He complains that he was unable to use his regular classroom for his first period class in October 2010 and therefore had to teach in an "excessively noisy" media center; he was assigned a classroom with a "University of Puerto Rico" banner above the door; he was unable to access a school computer in October 2011 because his password had been de-activated;

and the District twice unsuccessfully attempted to transfer him out of the High School.  These actions did not, however, "materially . . . change . . . the terms and conditions of employment."  *Galabya*, 202 F.3d at 640 (internal quotation marks omitted).  Rather, these were mere inconveniences or annoyances that did not alter Vega's employment in a materially adverse way.  *See Terry*, 336 F.3d at 138.

Accordingly, while the district court applied the incorrect pleading standard, it did not err in dismissing Vega's claims of discrimination, except with respect to the disproportionate workload claim.

**D.  *Pleading of Retaliation Claims***

We consider the applicable pleading standards for a retaliation claim, and then we apply the pleading standards to the retaliation claims in this case.

**1.  *Applicable Pleading Standards for Retaliation Claims***

**a.  *Title VII***

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) "because" he has opposed any unlawful employment practice. *Id.*

The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: "[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64. As the Court cautioned:

> Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may

> matter enormously to a young mother with school-age
> children. A supervisor's refusal to invite an employee to lunch
> is normally trivial, a nonactionable petty slight. But to retaliate
> by excluding an employee from a weekly training lunch that
> contributes significantly to the employee's professional
> advancement might well deter a reasonable employee from
> complaining about discrimination.

*Id.* at 69 (citations omitted) (internal quotation marks omitted); *see also Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 207-09 (2d Cir. 2006) (quoting *White*, 548 U.S. at 62-71).

As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity. *See* 42 U.S.C. § 2000e-3(a). A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks omitted)); *accord Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be "because" a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). It is not enough that retaliation was a "substantial" or "motivating" factor in the employer's decision. *See id.* "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Further, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity." *Id.* at 845.

**b.** *Section 1983*

As in discrimination claims, the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII. Accordingly, we hold that for a retaliation claim under § 1983 to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2)

defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination.

## 2. *Application*

We conclude that Vega has adequately pleaded retaliation claims under Title VII based on his assignment of notoriously absent students, his temporary paycheck reduction, and the District's failure to notify him of a curriculum change, and under Title VII and § 1983 based on his negative performance review.

As a threshold matter, we note that the district court erred in concluding that, for a retaliation claim, a plaintiff needs to demonstrate a connection between the alleged retaliatory acts and his ethnicity. *See Vega*, 2014 WL 2157536, at *9 ("Moreover, plaintiff's retaliation claims suffer from the same deficiencies as his Title VII claims, i.e., the lack of a connection between the alleged retaliatory acts and his ethnicity.").  Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity -- complaining about or otherwise opposing discrimination.

- 41 -

Here, Vega alleges that after he engaged in protected activity by filing a charge of discrimination with the EEOC in August 2011, he was assigned more students with excessive absenteeism records (jumping from 20% to 75%), his salary was temporarily reduced, he was not notified that the curriculum for one of his classes was changed, and he received a negative performance evaluation. Each of these allegations plausibly states a claim of retaliation.

First, each of these actions "*could* well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57 (emphasis added). The assignment of a substantially higher number of chronically absent students could very well have adversely impacted Vega, both by making his teaching assignments more difficult and by making it more difficult for him to achieve good results. Likewise, the wrongful deduction of $738.92 from his paycheck for sick leave, the failure of the District to correct the error in full, and the failure of the District to correct the error even in part for six months surely could have had an adverse impact on Vega. *See id.* Similarly, failing to notify Vega of a curriculum change could have adversely affected him by, for example, making him appear unprepared or ineffective both to his

- 42 -

students and for his up-coming teacher evaluation, as he would have been preparing for and teaching the wrong curriculum.

Viewed in the context of his other allegations, it was plausible that the District's failure to notify Vega of the curriculum change was part of their pattern of discrimination and retaliation designed to make Vega look bad. Finally, of course, a poor performance evaluation could very well deter a reasonable worker from complaining. *See, e.g.*, *Krinsky v. Abrams*, No. 01-CV-5052 (SLT)(LB), 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) ("[A] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a charge of discrimination." (alteration omitted) (quoting *White*, 548 U.S. at 68) (internal quotation marks omitted)).

Second, each of these actions closely followed protected activity by Vega. His assignment of classes "for the 2011/2012 school year," App. at 16, must have been made shortly before the start of the school year -- shortly after he filed his initial charge with the EEOC on August 8, 2011. Similarly, the District changed the curriculum for his class in November of 2011, within three months

- 43 -

of his initial filing with the EEOC. The District made the erroneous sick leave deduction from Vega's pay check on March 2, 2012, just two months after Vega filed an addendum to his EEOC complaint on January 4, 2012, providing greater detail about his previous claims and adding new allegations of discrimination and retaliation. Vega received his poor teacher evaluation (from Artiles)[11] in February 2013, approximately two months after he filed his *pro se* complaint in the action below, on December 12, 2012. According to Vega, this was his first negative evaluation in sixteen years of teaching at the High School. Hence, the Complaint plausibly alleges a temporal proximity for each of these actions.

Some of these actions, considered individually, might not amount to much. Taken together, however, they plausibly paint a mosaic of retaliation and an intent to punish Vega for complaining of discrimination.

## *CONCLUSION*

We conclude that the district court erred in granting Defendants' motion for judgment on the pleadings in full and dismissing the Complaint in its entirety. For the reasons stated above, we VACATE and REMAND for further proceedings consistent with this opinion.

---

[11] The Complaint alleges, "[t]his negative evaluation clearly shows Artiles' bad faith intent to directly cause [Vega] harm and to violate his constitutional rights under the Equal Protection Clause." App. at 18.