# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1787

_____

Denise Blomker

*Plaintiff - Appellant*

v.

Sally Jewell, Secretary of the United States Department of the Interior

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: April 11, 2016
Filed: August 5, 2016

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Denise Blomker appeals the district court's[1] dismissal under Federal Rule of Civil Procedure 12(b) of her pro se complaint alleging a sexual harassment claim

---

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

based on hostile work environment and a retaliation claim against her employer, the Department of the Interior ("Department"). We affirm.

## I. *Background*

We accept as true the factual allegations in Blomker's pro se complaint at this stage of the proceedings. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

Blomker worked for more than four years at the Department as a secretary in the Migratory Birds Division of the U.S. Fish and Wildlife Service. The Department informed Blomker of its intent to terminate her on April 10, 2014. According to the Department's letter, Blomker's termination was based on Blomker (1) calling her supervisor "a god-d***ed f***ing liar" and grabbing a supervisor's arm and twisting it, (2) stating that she would send copies of e-mails in her possession to the Equal Employment Opportunity Commission (EEOC) and the court, and (3) copying unnecessary people on e-mails after repeated warnings to cease doing so. Blomker was terminated on May 8, 2014.

Blomker filed a pro se complaint against the Department, alleging, *inter alia*, a sexual harassment claim based on hostile work environment and a retaliation claim against the Department.[2] In support of her sexual harassment claim based on hostile work environment, Blomker alleges seven incidents of harassment by two different men over a nearly three-year period. They are as follows:

---

[2]Blomker indicated in her complaint that she was alleging discrimination based on six different protected classes, retaliation, and sexual harassment. The district court construed her complaint as stating three causes of action: disability discrimination, sexual harassment, and retaliation. Only the sexual harassment and retaliation claims are at issue in this appeal.

(1)     On February 24, 2010, Blomker's coworker, Tom Will, "moved his finger toward [a] button [on Blomker's shirt] and stopped approximately three inches from putting his finger between [her] breasts." Will then said, with "a smirk on his lips," "I can put a button right there."

(2)     On September 9, 2010, Will called out Blomker's name. "As he came toward [Blomker,] [she] noticed he was sexually aroused (having an erection)." With "a smirk on his face," Will "walked up and stood extremely close to [Blomker] that [she] stepped back from him."

(3)     "On several occasions" during February and March 2010, Will, with "a smirk on his face," (a) "walked over to the candy basket on the window sill, picked it up, swung the candy basket[,] and then . . . picked up the candy that had fallen onto the floor and put it back into the candy basket"; and (b) "[d]ug into the plastic container of candy, moving the candy about and making extra noise while he was playing with the candy." Blomker believed that Will engaged in this conduct to get her attention.

(4)     On December 7, 2010, Will "walked up behind [Blomker] and stood extremely close." According to Blomker, had she "back[ed] up a couple of inches, [she] would have bumped into [Will]."

(5)     On April 14, 2011, Will was on his cell phone outside of Blomker's cubicle and briefly blocked her from exiting her cubicle.

(6)     On both November 19 2012, and December 6, 2012, Blomker's coworker, Richard Rottman, who sat in the cubicle adjacent to Blomker, "was picking at the seam located in the crotch of his pants—his legs spread apart 180 degrees while [Blomker] was having a conversation with him."

(7)     On January 10, 2013, Rottman had an erection while speaking to Blomker.

Blomker characterizes these incidents as "attacks" and "solicitations." She alleges that management at the Department "turned their [sic] backs on me, refused twice accommodations to help alleviate my visual and physical contact with the two perpetrators. I believe this to be a result of the EEO complaints I have made and subsequent filing with the District Court."

With regard to her retaliation claim, Blomker cites several situations that she alleges constitute retaliation based on her reporting discrimination. The district court accurately summarized these situations as follows:

> 1) her work performance or work attendance was criticized and she feels that she has been unnecessarily blamed and criticized at work (*see, e.g.*, [Complaint] ¶¶ 18–20, 22–26, 29, 30, 32, 37–42, 44A, 44C–D, 45–50, 53, 54, 59, 61, 65, 66, 68, 70–72, 75, 78–82, 84, 85, 87, 89);
>
> 2) she was not kept up-to-date on office news or invited to office events (*see, e.g., id.* ¶¶ 19, 34, 55–57, 59, 60);
>
> 3) there was poor communication between her and her coworkers and supervisors (*see, e.g., id.* ¶¶ 18, 19, 24, 34, 41, 44D, 52, 54, 63, 67, 83);
>
> 4) people were talking about her EEO complaints (*see, e.g., id.* ¶¶ 28, 58, 73);
>
> 5) her coworkers sometimes did her job, especially when she was away from the office (*see, e.g., id.* ¶¶ 44D, 44E, 44G, 56, 62, 63, 83, 88);
>
> 6) she had antagonistic relationships with her bosses (*see, e.g., id.* ¶¶ 19, 23, 27, 29, 44B, 44D, 53, 54, 67–69, 75, 77, 78, 83, 91);
>
> 7) she did not receive a raise and was not permitted to take classes *(see, e.g., id.* ¶¶ 32, 33, 35, 76, 77); and

8) she was suspended and ultimately terminated (*see, e.g.*, *id*. ¶¶ 74, 93).

(Footnote omitted.)

The Department filed a Rule 12(b) motion to dismiss Blomker's complaint on the basis that Blomker failed to adequately exhaust her administrative remedies. It also argued that she could not state a claim for discrimination or retaliation. The district court expressly declined to decide the exhaustion issue, finding only that Blomker could not state a claim for discrimination or retaliation. Blomker appeals.

## II. *Discussion*

Blomker argues that the district court erred in dismissing her sexual harassment and retaliation claims because she has set forth sufficient allegations to support both claims. We review de novo a district court's dismissal of a complaint based upon Rule 12(b)(6), "taking the facts alleged in the complaint as true." *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

"In *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Supreme Court negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary,

not a pleading, standard." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510, 512). Under *Swierkiewicz*, "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Id*. at 54 (citing *Swierkiewicz*, 534 U.S. at 512). "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." *Id*.

However, "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." *Id*. Instead, such "elements are part of the background against which a plausibility determination should be made." *Id*. (citations omitted). In summary, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Id*. As we have previously explained:

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, *the complaint must include sufficient factual allegations to provide the grounds on which the claim rests*. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (alteration in original) (emphasis added) (quotations and citations omitted).

Does Blomker's complaint set forth sufficient factual allegations to provide the grounds upon which her sexual harassment claim based on hostile work environment and retaliation claim rest? We conclude that it does not.[3]

A. *Sexual Harassment Claim Based on Hostile Work Environment*

To establish the elements of a sexual harassment claim based on a hostile environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999).

"The fourth element involves both objective and subjective components." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009) (citation omitted). It requires that "[t]he harassment . . . be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe her working conditions have been altered." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

"The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). For that reason,

> [t]he standards for a hostile environment are demanding, and "conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003). When evaluating a hostile environment,

---

[3]Because we conclude that Blomker failed to state a claim for sexual harassment or retaliation, we need not address the exhaustion issue.

we look at the totality of the circumstances, "including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Vajdl* [*v. Mesabi Acad. of KidsPeace, Inc.*], 484 F.3d [546,] 551 [(8th Cir. 2007)].

*Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010).

"More than a few isolated incidents are required," and the alleged harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999) (quotation and citations omitted). "The [Supreme] Court often has made the point that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Al-Zubaidy*, 406 F.3d at 1039 (quotations and citations omitted). In fact, the Supreme "Court implores lower courts to apply the demanding harassment standards to *filter out complaints* attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (emphasis added) (quotations and citation omitted).

Accepting as true the factual allegations contained in Blomker's complaint and granting her the benefit of all reasonable inferences that can be drawn from those allegations, *see Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010), we find, as a matter of law, that the facts alleged in Blomker's complaint fail to show harassment so severe or pervasive that they satisfy the high threshold for a sexual harassment claim based on hostile work environment. In other words, we find that

Blomker has failed to set forth "sufficient factual allegations" that entitle her to relief. *See Gregory*, 565 F.3d at 473.[4]

---

[4]Both our sister circuits and district courts within this circuit have similarly dismissed hostile work environment claims, some based on sexual harassment, for failure to state a claim under Rule 12(b)(6). *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) (holding that allegations that African-American employee's supervisor at city agency made negative statements about employee to another supervisor, distanced herself from employee when she was nearby, declined to meet with employee, and wrongfully reprimanded employee were insufficient to allege racial discrimination that was so severe or pervasive that it created an abusive work environment and altered conditions of her employment, as required to establish a hostile work environment); *Pittman v. Bob*, 520 F. App'x 101, 102 (3d Cir. 2013) (unpublished per curiam) (holding that allegations that foreman for employment agency's client, who was allegedly homosexual, asked employee if he was alright as employee was going on break, that foreman stood in an "uncomfortable" proximity to employee while performing job, and that, after summoning other workers to help employee with task, foreman placed his hands on employee's shoulders and said "You're lucky I like you," and "I like you because you're so big," did not state claim for hostile work environment, where conduct was not so severe or pervasive as to alter terms of employment or create abusive environment); *Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 F. App'x 209, 213 (3d Cir. 2012) (unpublished per curiam) (holding that a single complaint made by nurse about performance of federal employee over period of five months was insufficient to constitute pervasive and regular behavior required to sustain Title VII hostile work environment claim); *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 284 (3d Cir. 2011) (unpublished) (holding that United States Postal Service employee's supervisors' alleged conduct in telling employee that he was to work faster and leave the office earlier did not amount to a hostile work environment based on employee's age and disability because such conduct was not severe or pervasive); *Griffey v. Daviess/DeKalb Cty. Reg'l Jail*, No. 10-06099-CV-SJ-DGK, 2012 WL 10881, at *5 (W.D. Mo. Jan. 3, 2012) (holding that plaintiff failed to state a claim for hostile work environment because the plaintiff did not "establish[] that the harassment was so severe and pervasive to be legally actionable under both an objective and subjective standard"); *Sullivan-Robinson v. Ark. Parole Bd.*, No. 4:11CV00140 SWW, 2011 WL 3235904, at *4 (E.D. Ark. July 28, 2011) ("Here, plaintiff alleges Wallace made inappropriate statements to her three

As the district court noted, although the behavior alleged "might have been vile or inappropriate, the facts alleged in the complaint do not rise to the level of actionable sexual harassment." As noted *supra*, the seven alleged incidents spanned nearly a three-year period by two different men. *See Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934–35 (8th Cir. 2002) (reversing a million dollar judgment awarded to a plaintiff and determining, as a matter of law, that plaintiff failed to show severe or pervasive sexual harassment based on five harassing incidents over a two-year period: a proposition for a relationship; improper touching of the plaintiff's hand on multiple occasions; a request the plaintiff sketch a sexually objectionable planter; the posting of a "Man Hater's Club" poster; and a request the plaintiff "type the He–Men Women Haters beliefs").

Furthermore, none of the alleged incidents involved actual touching. And some of the allegations, such as Will playing with candy, are not definitively sexual in nature based on the facts alleged. "Numerous cases have rejected hostile work environment claims premised upon facts equally or more egregious than the conduct at issue here." *Id*. (citations omitted); *see also McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013) (holding that male supervisor's inappropriate behavior toward female state employee was not sufficiently severe or pervasive so as to alter terms and conditions of her employment where supervisor kissed employee on two occasions, placed his arms around her or attempted to do so three times, and requested that she remove an ingrown hair near his chin); *Anderson v. Family Dollar Stores of Ark.*,

---

times over a two-week period. She also alleges that at a later date she overheard two additional offensive comments Wallace made to another employee. The Court finds as a matter of law that these allegations, while establishing conduct that was offensive, unprofessional, and boorish, fail to state a claim of hostile environment sexual harassment.").

*Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (holding evidence insufficient to establish a hostile work environment claim where supervisor rubbed employee's back and shoulders, called her "baby doll," "accus[ed] her of not wanting to be 'one of [his] girls,'" suggested in a long-distance phone call "that she should be in bed with him," and "insinuat[ed] that she could go farther in the company if she got along with him"); *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1100–03 (8th Cir. 2005) (holding that a plaintiff who asserted that a harasser asked him to watch pornographic movies and to masturbate together, suggested that the plaintiff would advance professionally if the plaintiff caused the harasser to orgasm, kissed the plaintiff on the mouth, "grabbed" the plaintiff's buttocks, "brush[ed]" the plaintiff's groin, "reached for" the plaintiff's genitals, and "briefly gripped" the plaintiff's thigh, had not established actionable harassment); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for the jury where the conduct consisted of belittling and sexist remarks on almost a daily basis over a four-year period); *Alagna*, 324 F.3d at 977–79, 980 (concluding the coworker's conduct was inappropriate, but not sufficiently severe or pervasive where it included calls to the plaintiff's home, frequent visits to her office, discussions about relationships (not including sexual details) with his wife and other women, touching the plaintiff's arm, saying he "loved" her and she was "very special," placing romance novels in her faculty mailbox, and invading her personal space).

For these reasons, we affirm the district court's dismissal of Blomker's claim of hostile work environment based on sexual harassment.

## B. *Retaliation*

We now turn to Blomker's retaliation claim. Title VII makes it an unlawful employment practice for an employer to discriminate against its employees for opposing any unlawful employment practice. 42 U.S.C. § 2000e–3(a); *see also Guimaraes v. SuperValu, Inc.,* 674 F.3d 962, 977 (8th Cir. 2012). We apply the

retaliation provisions of § 2000e–3(a) broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted with a good faith, objectively reasonable belief that the practices were unlawful. *Guimaraes*, 674 F.3d at 977–78.

"[R]etaliation must be the 'but for' cause of the adverse employment action." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.")).

> Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be "because" a plaintiff made a charge, the plaintiff must *plausibly allege* that the retaliation was a "but-for" cause of the employer's adverse action. *See* [*Nassar*, 133 S. Ct. at 2533]. It is not enough that retaliation was a "substantial" or "motivating" factor in the employer's decision. *See id.*

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (emphasis added).

Here, Blomker points to four "specifications" from the Department's letter of removal—which she attached as an exhibit to her complaint—that she argues constitute direct evidence of retaliation, establishing a causal nexus between her protected activity and the materially adverse actions alleged in her complaint. Two of the these specifications mention her intent to file an EEO complaint.

Nonetheless, we find that Blomker's purported "direct evidence" of retaliation fails as a matter of law for lack of causation. Blomker has failed to "plausibly allege

-12-

that the retaliation was a 'but-for' cause of [the Department's] adverse action." *See id.* This is because Blomker attached to her complaint the Department's letter of removal, which sets forth her reasons for termination. As the Department points out, while the aforementioned "specifications" in the letter of removal "demonstrate[] . . . that her threats [to file an EEO complaint and lawsuit] may have motivated the Department (at least in part) to discharge her," that letter also includes other "specifications" unrelated to *any* protected activity. These "specifications" include: (1) calling her supervisor a "god-d***ed f***ing liar" and grabbing and twisting her forearm, and (2) not complying with her supervisor's directive to stop copying people beyond the scope of a discussion with her supervisor. In the "Reason for Proposing Removal" in the letter of removal, the Department characterized the nature of Blomker's misconduct as "serious," focusing exclusively on her assault upon her supervisor. The letter provides, in relevant part:

> *Under no circumstance should an employee engage in unwelcome physical contact with a supervisor*. There is no indication that Ms. Jones touched you; rather, she had to use her arm/finger to reestablish her personal space since you were uncomfortably close. Under those circumstances, you not liking Ms. Jones pointing her finger at you does not warrant your grabbing her arm and/or twisting it. Further, it is evident that you and Ms. Jones have a contentious supervisor-employee relationship, yet it appears you took measures to create that confrontation on March 25, 2014, by rushing to get in the elevator car with Ms. Jones. Such aggressive behavior on your part is contrary to statements you have made recently regarding your fear of being in meetings with your supervisor or other Division or Service staff without the presence of a police officer or security guard. Video footage from the lobby of the Regional Office clearly showed how quickly you moved to put yourself in a confined space (elevator) with your supervisor, strongly suggesting you wanted the confrontation. Ms. Jones was distraught and intimidated after the incident. The incident was disruptive to the workplace, resulting in shouting and yelling heard by a number of employees within the work area, a work area that included the elevator

-13-

lobby (a public area), your cubicle, and the connecting hallways (a minimum of at least 75 feet past multiple offices and a conference room. *Due to the seriousness of that incident, immediately thereafter you were placed and have remained on administrative leave.*

(Emphases added.) The letter also cited Blomker's past disciplinary record: a letter of reprimand on March 21, 2013, for inappropriate conduct[5] and a seven-day suspension from February 2, 2014, through February 8, 2014, for inappropriate conduct and failure to follow a supervisory directive.[6]

Blomker's inclusion of the letter of removal in her complaint shows, on its face, that Blomker's protected activity was *not* a but-for cause of the alleged adverse action by the Department. We therefore affirm the district court's dismissal of Blomker's retaliation claim.

---

[5]Specifically, Blomker was reprimanded for "raising [her] voice to [her] supervisor, ignoring and walking away from [her] supervisor during a conversation, and raising [her] voice in a discourteous and disrespectful manner in the open workplace."

[6]This suspension was based, in part, on Blomker's

failure to follow a supervisory directive related to when [she] again copied Mr. Wooley and Mr. Melius on an email to employees with the Federal Executive Board (FEB) of Minnesota notifying them you would be resigning from the FEB Diversity Council after being ordered on December 23, 2013, to cease and desist copying people on emails beyond the scope of a discussion unless they specifically asked to be copied.

-14-

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

The Department of the Interior has litigated Blomker's sexual harassment and retaliation action as though it was being decided on a motion for summary judgment rather than based upon the Rule 12(b) dismissal motion before the court. The district court continued this course of action, and in my view, improvidently dismissed the case. Accordingly, I respectfully dissent.

We review de novo a district court's dismissal of a complaint based upon Rule 12(b)(6), granting all reasonable inferences in favor of the nonmoving party. Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013). To establish the elements of a sexual harassment claim based on a hostile environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir. 1999). Furthermore, Title VII makes it an unlawful employment practice for an employer to discriminate against its employees for opposing any unlawful employment practice. 42 U.S.C. § 2000e-3(a); Guimaraes v. SuperValu, Inc., 674 F.3d 962, 977 (8th Cir. 2012). We apply the retaliation provisions of § 2000e-3(a) broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted with a good faith, objectively reasonable belief that the practices were unlawful. Guimaraes, 674 F.3d at 977-78.

At this stage of the proceedings, Blomker has satisfied her burden to plausibly plead hostile environment sexual harassment and retaliation. Ashcroft v. Iqbal, 556

-15-

U.S. 662, 678 (2009) (standard). Blomker plausibly alleges that she was subject to unwelcome sexual advances and other harassing conduct by the offending coworkers. These allegations are sufficient at the motion-to-dismiss level. In its briefing, the Department cites us no sexual harassment cases that were dismissed at the Rule 12(b)(6) stage, and the court's citation to a few mostly unpublished opinions from our "sister" circuits and district courts does not convince me that Rule 12(b) dismissal was appropriate in this particular case. And the suggestion that dismissal is appropriate because none of the incidents involve "actual touching" or conduct "definitively sexual in nature," ante at 10, is both legally unsupportable and sets a dangerous precedent for sexual harassment plaintiffs. See, e.g., Tang v. Citizens Bank, N.A., 821 F.3d 206, 216-17 (1st Cir. 2016) (noting that sexually harassing conduct need not involve physical touching or conduct that is overtly sexual in nature);[7] Hall v. Gus Constr. Co., 842 F.2d 1010, 1014 (8th Cir. 1988) (seminal case from our circuit setting forth the standard that conduct need not be "sexual in nature" in order to support a sexual harassment claim).

With regard to retaliation, Blomker clearly engaged in protected activity by filing EEO complaints within her department and by filing this action. She was denied a pay raise, suspended, and ultimately terminated within months of filing this action in federal court. The district court found that she did not state a claim because she could not establish causation. This was a premature determination on a Rule 12(b)(6) motion. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91-92

_____

[7]Tang is particularly instructive as it involved a plaintiff who was initially *pro se*, but is now represented by counsel, and involved four incidents that spanned the course of just over one year. 821 F.3d at 211-214. The court found that it could parse out the offending conduct (discussions of the word "ass" and Thai au pairs) and find it to be harmless in isolation, but at the *summary judgment stage*, this was not the appropriate analysis. Id. at 216. Importantly, the court pointed out that "Title VII requires no magic words to convert a verbal exchange into the stuff of sexual harassment." Id.

-16-

(2d Cir. 2015) (noting that plaintiff adequately and plausibly pleaded retaliation claims under Title VII when, soon after filing a charge of racial discrimination, his work duties changed, the district stopped communicating with him, and his pay was temporarily reduced); Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24-25 (1st Cir. 2014) (reversing the Rule 12(b)(6) dismissal of a retaliation claim because the plaintiff had plausibly alleged causation); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (holding that the employment discrimination prima facie case is "a flexible evidentiary standard" not a "rigid pleading standard").

As an alternative ground, the Department argues that Blomker has not properly exhausted her claims. In order for a federal employee to sue for discrimination under Title VII, the employee must initiate contact with an agency EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); see West v. Gibson, 527 U.S. 212, 218-19 (1999) (holding that for federal employees, Title VII is "a dispute resolution system that requires a complaining party to pursue administrative relief prior to court action, thereby encouraging quicker, less formal, and less expensive resolution of disputes within the Federal Government and outside of court"). Furthermore, a federal employee must wait until resolution of the EEO claim within the agency, or wait until the claim has been pending and unresolved for 180 days, before filing suit in court. 42 U.S.C. § 2000e-16(c).

However, failure to exhaust is an affirmative defense which must be proved by the defendant. Miles v. Bellfontaine Habilitation Ctr., 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam) (holding that because the plaintiff stated in her form pro se complaint that she filed a charge with the EEOC and attached her right-to-sue letter, the district court improperly dismissed the complaint for failure to exhaust). In her complaint, Blomker alleges that she has filed numerous EEO complaints, and that she has requested a copy of her right-to-sue letter but has not yet received it. Generally

attaching the right-to-sue letter is a precondition to filing suit, but it is one that may be remedied after suit has been filed. Jones v. Am. State Bank, 857 F.2d 494, 499-500 (8th Cir. 1988) (holding that receipt of a right-to-sue letter is a condition precedent to filing, but curable after the action had been commenced). Because the exhaustion issue was not decided by the district court and is unclear from the sparse record before us, I would reverse and remand so that the parties may litigate whether Blomker has exhausted her administrative remedies under the rubric set forth for federal agency employees. If she has, I believe Blomker should be allowed to litigate her Title VII harassment and retaliation claims.[8]

---

[8]My review of the record indicates that the district court correctly dismissed Blomker's disability discrimination claim. Blomker's allegations with regard to an alleged disability are sparse and lack plausibility. Nor does Blomker press the disability claim in her briefing.