Christopher CERNI, Plaintiff,

v.

**J.P. MORGAN SECURITIES LLC, Defendant.**

15-CV-5389 (AJN)

United States District Court, S.D. New York.

Signed September 20, 2016

Michael S. Paulonis, Law Offices of Michael S. Paulonis, Brooklyn, NY, for Plaintiff.

Lawrence Roy Sandak, Proskauer Rose LLP, Newark, NJ, Wanda Louise Ellert, Proskauer Rose LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge

Plaintiff Christopher Cerni ("Cerni") has brought this lawsuit under the Age Discrimination in Employment Act ("ADEA") against his former employer, Defendant J.P. Morgan Securities LLC ("J.P. Morgan"). Cerni asserts that J.P. Morgan violated the ADEA by (1) terminating him because of his age, (2) "papering" Cerni's personnel file with false performance reviews after Cerni complained about age discrimination, and (3) adopting a practice of terminating employees with executive titles and high salaries. Before the Court is Defendant J.P. Morgan's motion to dismiss Counts II and III of Cerni's Amended Complaint, see Dkt No. 16, and Plaintiff's request to amend the complaint, see Dkt No. 23. For the reasons provided below, J.P. Morgan's motion is granted in part and denied in part, and Cerni's request for leave to amend is denied.

## I. BACKGROUND

The following facts are taken from Cerni's Amended Complaint (Dkt No. 15) and are assumed to be true for purposes of this motion.

Plaintiff Cerni worked for Defendant J.P. Morgan from March 2000 until March 2013. Amend. Comp. ¶ 12, 47. He held a variety of titles, starting out as an "H&Q Officer" and ending as an "Executive Director" and "Senior Trader" in J.P. Morgan's "Americas Equities Block Trading" group. Amend. Compl. ¶¶ 12-24. Throughout his employment at J.P. Morgan, Cerni

received positive performance reviews. For example, his performance ratings in both 2005 and 2006 were "exceeds expectations," and his performance reviews for 2011 and 2012 stated that he was "a good team player and always willing to lend a helping hand" and that "[h]is relationship with Capital Markets is strong." Amend. Compl. ¶¶ 35, 75-76, 92-93. Never during his tenure at J.P. Morgan was Cerni informed that he had received a negative performance review. Amend. Compl. ¶¶ 94-98.

Starting in 2012, the conditions of Cerni's employment "dramatically changed for the worst [sic]." Opp. at 2 (Dkt No. 23); Amend. Compl. ¶¶ 25-40. For example, Cerni was taken off one of his higher revenue generating accounts and reassigned to a less profitable account. Amend. Compl. ¶¶ 25-29. Things came to a head when, on February 13, 2013, Cerni was advised that he was being terminated, effective March 29, 2013. Amend. Compl. ¶ 47; Ex. 1. According to the notice Cerni received, he was being terminated because J.P. Morgan's "staffing needs ha[d] changed." Ex. 1.

Cerni suspected that age discrimination played a role in his termination. At the time Cerni was terminated, he was 42 years old. Amend. Compl. ¶ 107. A few months before his termination, one of Cerni's supervisors had stated during a meeting "that [J.P. Morgan] was going to 'juniorize' the sales and trading floor by replacing 'older people' with 'younger and leaner' employees." Amend. Compl. ¶ 41. Approximately one month later, another supervisor expressed his intention to initiate "a reduction in headcount where more highly paid senior executives would be replaced with less costly junior traders and sales staff." Amend. Compl. ¶ 42. Cerni knew that he was one of these "more highly paid senior executives" because,

when he had received his 2012 bonus, his boss had repeatedly referred to his "high salary." Amend. Compl. ¶ 44.

At some point, Cerni hired a lawyer. See Amend. Compl. ¶ 51-52. Cerni's lawyer (Michael Paulonis) called J.P. Morgan's Human Resources ("HR") Department to inquire why Cerni had been terminated, but he received no response. Amend. Compl. ¶ 51. After two weeks had passed, Paulonis called again and left a voicemail asserting that age discrimination had been the reason for Cerni's termination. Amend. Compl. ¶ 51.

In response to this voicemail, J.P. Morgan's in-house counsel sent an email to Paulonis. Amend. Compl. ¶ 52; Ex. 2. The email stated that Cerni had been terminated not because of age discrimination, but because of his poor performance reviews. According to J.P. Morgan's counsel, "Cerni had been rated Needs Improvement (the lowest possible rating) for both 2011 and 2012" and also had a low peer review ranking for 2012. Ex. 2. J.P. Morgan's counsel further asserted that "[n]o one with these ratings and rankings was not selected for termination, and in fact, others selected for termination were considerably better on both fronts." Ex. 2. In his Amended Complaint, Cerni asserts that these "unfounded, post hoc, negative performance reviews" did not exist "prior to his objection to his termination as discriminatory." Amend. Compl. ¶ 121.

After pursuing age discrimination charges with the Equal Employment Opportunity Commission ("EEOC"), Cerni filed this lawsuit against J.P. Morgan on July 11, 2015. Dkt. No. 1. His Complaint alleged three counts under the ADEA. *Id.* J.P. Morgan filed a motion to dismiss Counts II and III of the Complaint on November 10, 2015. Dkt No. 9. In response to the motion to dismiss, Cerni filed an Amended Complaint on December 10,

2015. Dkt No. 15. Cerni's Amended Complaint raised the same three claims as his original complaint: (1) an individual disparate treatment claim alleging that J.P. Morgan terminated Cerni due to his age, (2) an anti-retaliation claim alleging that J.P. Morgan "papered" Cerni's file with false negative performance reviews after he complained about age discrimination, and (3) a disparate impact collective action challenging J.P. Morgan's "practice of selecting employees with executive titles and high salaries ... for termination." Amend. Compl. ¶¶ 106-135. Defendants renewed their motion to dismiss Counts II and III on January 25, 2016. Dkt No. 16.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).

## III. DISCUSSION

Defendant J.P. Morgan has moved to dismiss Count II (the anti-retaliation claim) and Count III (the disparate impact collective action) of Cerni's Amended Complaint. For the reasons provided below, the Court denies J.P. Morgan's motion as to Count II but grants the motion as to Count III.

### A. Count II Survives J.P. Morgan's Motion to Dismiss

In the second count of his Amended Complaint, Cerni brings a retaliation claim under the ADEA. Amend. Compl. ¶¶ 120-126. J.P. Morgan argues that Cerni's retaliation claim fails on three separate grounds: (1) Cerni did not suffer a "materially adverse action," (2) the claim is implausible, and (3) the only evidence supporting Cerni's retaliation claim is inadmissible. Mot. at 8-15 (Dkt No. 17). All three arguments fail.

### 1. False Negative Performance Reviews Constitute a "Materially Adverse Action"

■■ The ADEA's anti-retaliation provision forbids an employer from retaliating against an employee for complaining of unlawful age discrimination. *See* 29 U.S.C. § 623(d); *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). A nearly identical provision can be found in Title VII. *Kessler*, 461 F.3d at 205. A prima facie case of retaliation under the ADEA has four elements: (1) the employee engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) a causal connection exists between the protected activity and the adverse action. *Id.* at 205–06. In its motion to dismiss, J.P. Morgan challenges only the existence of the adverse action element. Mot. at 12-15.

■■ Cerni alleges that he suffered adverse action when J.P. Morgan, in response to Cerni's attorney's complaint of age discrimination, "chang[ed] the reason for [his] termination from job elimination to a performance based on termination" and "'paper[ed]' his file with unfounded, post hoc, negative performance reviews."

Amend. Compl. ¶ 121. He further alleges that his performance record is now "tarnished," and that his future employment prospects are reduced. Amend. Compl. ¶ 123.

The Supreme Court and Second Circuit have defined "adverse action" for purposes of a retaliation claim broadly. A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler*, 461 F.3d at 207 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Crucially, the broadness of this definition means that "the scope of [the] anti-retaliation provision is broader than that of its discriminatory action provision." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007); *see also Watkins v. Paulsen*, 332 Fed.Appx. 958 (5th Cir. 2009) (citing *Burlington N.*, 548 U.S. at 67, 126 S.Ct. 2405) ("[T]he range of employer actions prohibited by [the ADEA's] anti-retaliation provisions is broader than the range covered by its anti-discrimination provisions."). An employer's action can be "materially adverse" for purposes of an anti-retaliation claim, even if the challenged action does not affect the employee's "compensation, terms, conditions, or privileges of employment" and thus would not be materially adverse for purposes of a discrimination claim. *Kessler*, 461 F.3d at 208; *see also Kirkweg v. N.Y. City Dep't of Educ.*, 633 Fed.Appx. 40, 41 (2d Cir. 2016) (noting that certain acts "can constitute adverse action supporting a claim for retaliation whether or not accompanied by any pecuniary injury").

■ The Second Circuit has previously held that, under this generous standard, a negative performance review can constitute an adverse action for purposes of a retaliation claim. For example, in *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015), the Second Circuit held that a high school teacher who was terminated after complaining about race discrimination had plausibly alleged a retaliation claim. In addressing the adverse action element, the Court noted that the plaintiff had alleged "that after he engaged in protected activity by filing a charge of discrimination with the EEOC ..., he was assigned more students with excessive absenteeism records (jumping from 20% to 75%), his salary was temporarily reduced, he was not notified that the curriculum for one of his classes was changed, and he received a negative performance evaluation." *Id.* at 91. According to the Court, "[e]ach of these allegations plausibly states a claim of retaliation." *Id.* (emphasis added). Addressing the negative performance evaluation specifically, the Court wrote that "of course, a poor performance evaluation could very well deter a reasonable worker from complaining," the relevant standard for determining whether something constitutes an "adverse action." *Id.* at 92. The Second Circuit in *Vega* also cited favorably a district court opinion that stated that "negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a charge of discrimination." *See id.* (quoting *Krinsky v. Abrams*, No. 01–CV–5052 (SLT) (LB), 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007)). *Vega* thus establishes that receipt of a negative performance review constitutes an "adverse action" for purposes of a retaliation claim. 801 F.3d at 91; *see also Ibok v. Sec. Indus. Automation Corp.*, 369 Fed.Appx. 210, 214 (2d Cir. 2010) ("Here, [Plaintiff] suffered adverse actions in the form of warnings, a negative performance review, the elimina-

tion of his shift, and, ultimately, his firing."); *Siddiqi v. N.Y. City Health & Hosps. Corp.*, 572 F.Supp.2d 353, 372 (S.D.N.Y. 2008) ("Unlike in discrimination claims, negative performance reviews, standing alone, can be considered an adverse employment action [for purposes of a retaliation claim]."). J.P. Morgan makes no arguments as to why *Vega* should not control the materially adverse action question presented in this case. *See* Mot. at 13-15. Because Cerni claims that he received a negative performance review, he has sufficiently alleged the adverse action element of his retaliation claim.

## 2. Cerni's Claim of Retaliation is Plausible

Next, J.P. Morgan argues that Cerni's claim of retaliation is implausible because the reason for Cerni's termination never changed. Mot. at 10-12. According to J.P. Morgan, even under the allegations made by Cerni in his Amended Complaint, the rationale for Cerni's firing was always "job elimination." J.P. Morgan therefore argues that Cerni's claim that J.P. Morgan "changed" the reason for his termination from "job elimination" to "performance based" is implausible. *Id.*

J.P. Morgan misconstrues Cerni's allegations. It is true, as J.P. Morgan argues, that the overarching reason for Cerni's termination was "job elimination." But Cerni's allegation is that the underlying reason why he, in particular, was selected for "job elimination" changed in response to his age discrimination complaint. According to Cerni's allegations, he was initially told he was chosen for termination because "staffing needs ha[d] changed." Amend. Compl. ¶ 47; Ex. 1. Only after his lawyer alleged age discrimination did J.P. Morgan come forward and assert that Cerni was selected for job elimination because of his poor performance. Amend. Compl.

¶ 51-54; Ex. 2. Furthermore, even if the ostensible reason for terminating Cerni was always "job elimination," Cerni's allegations that J.P. Morgan " 'paper[ed]' his file with unfounded, post hoc, negative performance reviews that he did not have prior to his objection to his termination as discriminatory" plausibly states a claim for retaliation. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937; *Vega*, 801 F.3d at 91–92.

## 3. Federal Rule of Evidence 408 Is Irrelevant For Purposes of This Motion to Dismiss

■ Finally, J.P. Morgan argues Count II must fail because the only evidence Cerni has of retaliation, the email sent by J.P. Morgan's in-house counsel to Cerni's attorney discussing the reasons for Cerni's termination, is inadmissible under Federal Rule of Evidence 408. Mot. at 9-10. "However, the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage." *New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, No. 07 Civ. 8304, 2009 WL 1515696, *5 (S.D.N.Y. June 1, 2009); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal."). At this stage, the Court cannot dismiss Count II on evidentiary grounds.

■ Furthermore, the Court notes that, even if it analyzed J.P. Morgan's evidentiary challenge on the merits, it still would not dismiss Count II. Although settlement statements are inadmissible to prove liability or amount, they are admissible when the evidence is offered for another purpose. *See* Fed. R. Evid. 408; *Pace v. Paris Maint. Co.*, 7 Fed.Appx. 94 (2d Cir. 2001). Accordingly, "Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the

evidence serves to prove liability either for making, or later acting upon, the threats." *Pace*, 7 Fed.Appx. 94 (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1294 (6th Cir. 1997)); *see also Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (noting that settlement letters "can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence ( [age] discrimination)"); *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987 (JMF), 2012 WL 1890384, at *4 (S.D.N. Y May 15, 2012) (holding that "statements made in the course of negotiations to settle the underlying discrimination claim" were admissible "to establish the retaliation claim"); *Carr v. Health Ins. Plan of Greater N.Y., Inc.*, No. 99 Civ. 3706 (NRB), 2001 WL 563722, at *4 (May 24, 2001) (same).

### B. Count III Is Dismissed

Count III of Cerni's Amended Complaint is a disparate impact collective action under the ADEA. Amend. Compl. ¶¶ 127-135; *see Smith v. City of Jackson*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (holding that disparate impact theories are cognizable under the ADEA). Cerni alleges that J.P. Morgan's "practice of selecting employees with executive titles and high salaries ... for termination in 2013 had a disparate impact on employees over 40 years old." Amend. Compl. ¶ 129. J.P. Morgan argues that this count should be dismissed for two reasons: (1) Cerni failed to exhaust his administrative remedies, and (2) J.P. Morgan's policy was "based on a reasonable factor other than age." Mot. at 8, 15-25. The Court agrees with J.P. Morgan on both grounds.

#### 1. Cerni Failed to Exhaust A Disparate Impact Claim

Before filing an ADEA claim in federal court, a plaintiff must exhaust the available administrative remedies by filing a timely complaint with the EEOC. *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001). Here, Cerni filed an initial charge with the EEOC on June 24, 2013, *see* Dkt No. 15-3, an amended charge on November 5, 2013, *see* Dkt No. 15-5, and a rebuttal on April 7, 2014, *see* Dkt No. 15-7. As explained below, however, none of these charges exhausted Count III of Cerni's Amended Complaint.

In order to bring a disparate impact claim, a plaintiff cannot "merely alleg[e] a disparate impact, or point to a generalized policy that leads to such an impact." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008) (alteration omitted) (quoting *Smith*, 544 U.S. at 241, 125 S.Ct. 1536). Rather, the plaintiff must "isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Id.* Here, Cerni's Amended Complaint does "isolate and identify" a specific employment practice; he claims that J.P. Morgan's practice of terminating higher compensated employees was a facially neutral policy that had a disparate impact on older employees. Amend. Compl. ¶¶ 129-135. But, in his filings with the EEOC, Cerni does not once mention this specific employment practice. Rather, Cerni's EEOC submissions focus largely on his claims of individual, as opposed to collective, discrimination. To the extent that Cerni's EEOC filings can be construed as asserting a collective action claim, they focus solely on J.P. Morgan's purported disparate *treatment* of, or purposeful discrimination toward, older employees. Cerni never once asserted a disparate *impact* claim to the EEOC, nor did he ever specifically identify the "specific

employment practice"—termination of higher paid employees—that constitutes the basis of the collective action claim in his Amended Complaint. *See* Dkt No. 15-3, 15-5, 15-7.

 Cerni essentially admits that he did not make the proper allegations to the EEOC but argues that the Court should nonetheless find his disparate impact collective action claim properly exhausted because that claim is "reasonably related" to the other allegations in his EEOC filings. Opp. at 11-12. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (quotation marks and citation omitted). Cerni's argument fails because the Second Circuit has held that disparate treatment allegations are not "reasonably related" to disparate impact claims for purposes of exhaustion. *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015) ("[C]omplaints of individualized disparate treatment are not reasonably related to [an ADEA] disparate impact claim alleging class-wide discrimination."); *see also Woodman v. WWOR–TV, Inc.*, 293 F.Supp.2d 381, 390 (S.D.N.Y. 2003), *aff'd*, 411 F.3d 69 (2d Cir. 2005) (finding a plaintiff's disparate impact claim was not exhausted because a "disparate impact claim is not 'reasonably related' to [a] disparate

treatment claim"). Because Cerni's submissions to the EEOC focus only on disparate treatment, his disparate impact collective action claim was not exhausted.

### 2. J.P. Morgan Had a "Reasonable Factor Other Than Age" For Its Challenged Policy

 Even if Cerni had exhausted his disparate impact claim with the EEOC, the Court would still dismiss Count III for another reason. Specifically, it is apparent from the face of Cerni's Amended Complaint that J.P. Morgan had a reasonable factor other than age for its challenged policy, thus precluding liability under the ADEA.

 The scope of disparate impact claims under the ADEA is narrow. *See Meacham*, 554 U.S. at 102, 128 S.Ct. 2395; *Smith*, 544 U.S. at 240, 125 S.Ct. 1536 (noting that "the scope of disparate-impact liability under ADEA is narrower than under Title VII"). Although the ADEA makes it unlawful for an employer to discharge an individual because of the individual's age, *see* 29 U.S.C. § 623(a)(1), the Act does not prohibit employment decisions or policies "based on reasonable factors other than age." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (quoting 29 U.S.C. § 623(f)(1)); *see also EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1540 (2d Cir. 1996). This "RFOA" exemption precludes liability under the ADEA even when the "the motivating factor [for the action] is correlated with age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

 "The RFOA exemption from liability for disparate-impact claims under the ADEA is an affirmative defense," which means the employer bears the burden of proving that it applies. *Mabry v. Neighborhood Defender Serv.*, 769

F.Supp.2d 381, 395 (S.D.N.Y. 2011) (citing *Meacham*, 554 U.S. at 93–94, 128 S.Ct. 2395). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

Here, the applicability of the "RFOA" exemption to the ADEA is apparent from the face of Cerni's Amended Complaint. Cerni's sole theory of disparate impact liability is that J.P. Morgan had a "practice of selecting employees with executive titles and high salaries" for termination, a practice that had a disparate impact on older employees. *See* Amend. Compl. ¶ 129. Courts have repeatedly held—even at the motion to dismiss stage—that "cost-savings" actions by employers, such as terminating employees with higher salaries, are based on a reasonable factor other than age and thus do not violate the ADEA, even though such an action will likely have a disparate impact on older employees. *See, e.g., Hazen Paper*, 507 U.S. at 611–12, 113 S.Ct. 1701 (discharging employees with more experience in order to prevent pension benefits from vesting does not violate ADEA); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir. 1994) (firing employees to reduce salary costs does not violate ADEA); *Arciuolo v. Tomtec Inc.*, No. 3:14–cv–00624, 2015 WL 6384598, at *3 (D. Conn. Oct. 22, 2015) (dismissing ADEA disparate impact claim partly because defendants' decision to convert salaried employees to hourly-employee status was motivated by a "cost-savings"); *Mabry*, 769 F.Supp.2d at 395; *N.Y. 10–13 Ass'n, Inc. v. City of New York*, No. 98 Civ. 1425 (JGK), 2000 WL 1376101, at *10 (S.D.N.Y. Sept. 22, 2000).

Cerni does not allege a disparate treatment claim, nor does he claim that J.P. Morgan's policy of targeting higher-paid employees was a pretextual front for purposeful discrimination. Amend. Compl. ¶¶ 127-135; *cf. EEOC v. Francis W. Parker Sch.*, 41 F.3d 1073, 1079 (7th Cir. 1994) ("It remains unlawful to invoke pretextually an ostensibly neutral factor that tends to correlate with age, while actually laboring under forbidden 'inaccurate and stigmatizing stereotypes.'" (quoting *Hazen Paper*, 507 U.S. at 610, 113 S.Ct. 1701)). And although Cerni hints that J.P. Morgan's practice of terminating people based on their salary is unreasonable, *see* Opp. at 14, this argument is foreclosed by the number of cases (discussed above) holding that cost-savings policies are reasonable. Because courts have already held that Cerni's challenged policy is based on a reasonable factor other than age, Cerni's disparate impact claim fails as a matter of law.

### C. The Request to File An Amended Complaint is Denied

■ At the end of his opposition to the motion to dismiss, Cerni requests leave to file another amended complaint. Opp. at 15-16. Cerni seeks to "clarify" the "collective nature of the two distinct disparate 'treatment' and disparate 'impact' claims," wishes to add a request for punitive damages, and desires to provide "more organization" to his complaint. Opp. at 15.

■ "Once a responsive pleading has been filed, plaintiff may amend the complaint only with leave of court." *Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 123 (E.D.N.Y. 1996) (citing Fed. R. Civ. P. 15(a)). Although leave to amend should be granted freely, *see* Fed. R. Civ. P. 15(a)(2), "a district court 'plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the

defendant.'" *Kenney v. Clay*, 172 F.Supp.3d 628, 643, 2016 WL 1156747, at *11 (N.D.N.Y.2016) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)). A court may deny leave to amend "when a party has been given ample prior opportunity to allege a claim." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996).

As Defendant J.P. Morgan points out, despite what his opposition says, Cerni is not seeking to "clarify" his disparate treatment and disparate impact collective action claims. *See* Reply at 9 (Dkt No. 25). Rather, he is seeking to *add* a disparate treatment claim. Cerni labeled his third count a "*Disparate Impact*" claim. Amend. Compl. at 20 (emphasis added). Nowhere in his allegations in Count III does Cerni mention "disparate treatment" or allege that J.P. Morgan purposefully targeted older employees. Rather, he only alleges that J.P. Morgan's practice of terminating higher paid employees "had a disparate impact" and an "adverse impact on older workers." Amend. Compl. ¶¶ 130-31.

The Court denies Cerni's leave to amend because he had "ample prior opportunity to allege [a disparate treatment] claim." *De Jesus*, 87 F.3d at 72. At this point, Cerni has already filed two complaints, including one that was in response to J.P. Morgan's motion to dismiss. Cerni does not allege that some intervening event has occurred that led him to recently discover the viability of a disparate treatment claim. *See* Opp. 15-16. To the contrary, the fact that Cerni claims he only wants to "clarify" his pleading suggests that Cerni had the facts relevant to a disparate treatment claim all along. Permitting Cerni to amend his complaint again in order to add a claim that he always knew about would delay further proceedings and cause prejudice to Defendant J.P. Morgan. Because Cerni could have raised this claim before

and has provided no explanation whatsoever for the delay in doing so, the Court denies Cerni's request to amend his complaint. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration omitted)); *Ariztegui v. United Tech. Int'l Operations, Inc.*, No. 3:10cv672, 2011 WL 5593115, at *4 (D. Conn. Nov. 17, 2011) (denying a plaintiff's motion to amend because "it is obvious that this particular claim could have been brought at the outset of the case, as Plaintiff is not relying upon new information or evidence to support this claim"); *see also Morritt v. Stryker Corp.*, 973 F.Supp.2d 177, 191 (E.D.N.Y. 2013) (denying motion to amend complaint because the plaintiffs "knew of [the proposed new claim] prior to filing the complaint, and well before the deadline for amending the pleadings"):

## IV. CONCLUSION

For the reasons provided above, Defendant J.P. Morgan's motion to dismiss is DENIED with respect to Count II and GRANTED with respect to Count III. Count III is dismissed with prejudice.

Furthermore, Plaintiff's request to file a second amended complaint is denied.

By separate order, the Court will schedule an initial pretrial conference for this case.

This resolves Docket Number 16.

SO ORDERED.