23-7900-cv
*Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of May, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

_____

THOMAS FLANAGAN, RUSSELL THOMPSON, SARAH MOFFATT, KYLE GRANT, CHRISTINE FLANAGAN,

> *Plaintiffs-Appellants*,

v.                                                                23-7900-cv

GIRL SCOUTS OF SUFFOLK COUNTY, INC., EMILY BROWN, TAMMY SEVERINO, PAMELA MASTROTA, DONNA SMELAND, JACQUELINE GORDON, DAWN LOTT, SARAH McCANLESS, BRANDY SCOTT, JENNIFER FRIEDMAN,

> *Defendants-Appellees*.

_____

FOR PLAINTIFFS-APPELLANTS:          STEPHEN BERGSTEIN (Frederick Brewington, Law Offices of Frederick K. Brewington,

Hempstead, New York, *on the brief*), Bergstein & Ullrich, New Paltz, New York.

FOR DEFENDANTS-APPELLEES: JEFFREY M. SCHLOSSBERG (Heather L. Veneroni, *on the brief*), Jackson Lewis, P.C., Melville, New York, *for* Girl Scouts of Suffolk County, Inc., Tammy Severino, Donna Smeland, Jacqueline Gordon, Dawn Lott, Sarah McCanless, Brandy Scott, and Jennifer Friedman.

RICHARD J. FREIRE (Mitchell S. Cohen and Harold G. Rosengarten, *on the brief*), Pillinger Miller Tarallo, LLP, New York, New York and Elmsford, New York, *for* Emily Brown and Pamela Mastrota.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on October 26, 2023, is **VACATED** in part and **AFFIRMED** in part, and the case is **REMANDED** for further proceedings consistent with this summary order.

Plaintiffs-Appellants Thomas Flanagan ("Flanagan"), Russell Thompson, Sarah Moffatt, Kyle Grant, and Christine Flanagan appeal from a judgment in favor of Defendants-Appellees Girl Scouts of Suffolk County, Inc. ("GSSC"), Pamela Mastrota, Emily Brown, Tammy Severino, Donna Smeland, Jacqueline Gordon, Dawn Lott, Sarah McCanless, Brandy Scott, and Jennifer Friedman. The judgment was entered on October 26, 2023, after the district court adopted in part and modified in part the magistrate judge's report and recommendation and granted Defendants' motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 21-cv-7153, 2023 WL 6307362 (E.D.N.Y. Sept. 28, 2023). On appeal, Plaintiffs argue that the district court

erred in granting dismissal because the amended complaint asserts plausible claims, including for discrimination and retaliation, under the following federal and state statutes: 42 U.S.C. § 1981; False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"); New York State Human Rights Law, N.Y. Exec. Law § 296(a) ("NYSHRL"); New York State False Claims Act, N.Y. State Fin. Law § 187 *et seq* ("NYFCA"); and New York State Not-For-Profit Corporation Law, N.Y. Not-for-Profit Corp. Law § 715-b ("N-PCL").[1] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND[2]

Plaintiffs are former GSSC employees who were terminated on June 22, 2021. All Defendants, except Mastrota, Brown, and Severino, served on GSSC's Board of Directors (the "Board") at all relevant times. Mastrota served as GSSC's President and CEO from April 2020 to November 2020, at which point she left and was replaced by Defendant Severino. Brown served as GSSC's Fund Development Coordinator and left shortly after Mastrota.

During her first week at GSSC and before meeting Plaintiff Grant, who served as GSSC's Director of Technology, Mastrota allegedly stated that Grant "would be one of the first people fired," as he was "unqualified, overpaid and only obtained his position because his mother Yvonne Grant was the previous CEO." Joint App'x at 33. Grant and his mother are African American.

---

[1] The district court also dismissed Plaintiffs' claims under the National Labor Relations Act, 21 U.S.C. § 151 *et seq*.; New York State Labor Law, N.Y. Lab. Law §§ 198, 215; and N-PCL § 720-a, as well as their hostile work environment claims under Section 1981 and the NYSHRL. Plaintiffs do not challenge those decisions on appeal. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

[2] The following facts are drawn from Plaintiffs' amended complaint, which we accept as true for purposes of reviewing a Rule 12(b)(6) dismissal. *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

Grant had been with GSSC for seventeen years, progressing from custodian to graphic designer to art director, and ultimately to Director of Technology, a position he had held for over seven years before Mastrota joined GSSC.

Shortly after joining GSSC, Mastrota reduced employees' salaries, with all employees of color, including Grant and his sister, receiving minimum salary reductions of 20%, while a Caucasian employee received the lowest reduction rate of 10%. Among the directors, Grant received the highest salary reduction at 40%. In reducing Grant's salary, Mastrota, who had not yet reviewed his activity reports, allegedly stated that Grant was "not busy enough" and made "crazy money" for his "level of activity." *Id.* at 35–36. After Plaintiff Flanagan, then-Chief Operating Officer and Grant's supervisor, defended Grant's performance, Mastrota increased Flanagan's salary reduction from 20% to 30%.[3] Similarly, after Plaintiff Thompson supported Grant, Thompson also received a 30% salary reduction.

In addition to reducing Grant's salary, Mastrota also demoted him from Director of Technology to IT Specialist, allegedly stating, "[s]ince he is not managing staff, he should not have a Manager title." *Id.* at 36. However, Grant was not managing staff at that time because Mastrota had previously removed his supervisee. In contrast, according to the amended complaint, Mastrota allowed a Caucasian employee who managed no staff to retain her manager title and pay. After demoting Grant, Mastrota met with Flanagan and a non-party Human Resources employee, and allegedly "warned" them to "be careful" with Grant because he "could get angry and destroy GSSC property including its computer systems infrastructure." *Id.* at 35. Mastrota is also alleged to have repeatedly singled out Grant at meetings and disparaged all Plaintiffs in a presentation to the Board.

---

[3] Flanagan ultimately received a 40% salary reduction after defending the reputations of the management team members.

4

On July 15, 2020, Plaintiffs submitted a letter to the Board in which they identified themselves as whistleblowers and raised several concerns about Mastrota (the "July 2020 Letter"). The July 2020 Letter asserted, *inter alia*, that Mastrota engaged in discrimination by targeting Grant and reducing salaries in a way that disproportionately affected employees of color. It also asserted that "by firing our employees, [GSSC] may have to return a portion of the [Paycheck Protection Program ('PPP')] funds" it received under the CARES Act, which "should [have been] used to keep people working." *Id.* at 84. Plaintiffs allege that "none of the [PPP] money . . . was paid back despite pay cuts greater than 25% and a complete failure to return furloughed staff to active employees." *Id.* at 78. While the July 2020 Letter itself made no allegations regarding the legality of GSSC's use of the funds or its application for them, which had been submitted by Yvonne Grant, Plaintiffs allege in their amended complaint that this practice was "unethical and illegal" because in addition to the "[PPP] funds," GSSC also had "more than $5 million in liquid assets" it could have used to pay staff, and that their purpose in sending the letter was to address "the gross mismanagement of salary and staffing processes." *Id.* at 43–44.

After receiving the July 2020 Letter, GSSC hired a law firm to conduct an independent investigation. The firm interviewed each Plaintiff and collected various documents. During the investigation, Grant also reported an incident in which Mastrota and Brown fabricated a technology problem in an attempt to portray Grant as unwilling or unable to do his job. The investigation concluded in November 2020 and, although the firm did not find evidence of discrimination, Mastrota and Brown left GSSC shortly thereafter. The Board then met with Plaintiffs to discuss their grievances, and Defendants Smeland and McCanless promised Plaintiffs that there would be no repercussions for their reporting and told them that they should not be afraid to speak out in the future, as retaliation "has no place here." *Id.* at 53.

5

In February 2021, Plaintiffs retained counsel and asked GSSC to increase their salaries to a level similar to that which predated Mastrota, provide backpay for the time their salaries were reduced, and reinstate their titles. After receiving no response, Plaintiffs proposed a separation agreement, which GSSC countered. Although both parties later indicated that they were not anticipating any separation, the negotiations ended without a resolution on May 27, 2021, and GSSC terminated Plaintiffs approximately one month later.

## DISCUSSION

We review *de novo* the district court's dismissal of a complaint under Rule 12(b)(6). *See Moreira v. Société Générale, S.A.*, 125 F.4th 371, 387 (2d Cir. 2025). A complaint survives a Rule 12(b)(6) motion to dismiss if it alleges sufficient facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, to state a plausible claim. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).

## I. Section 1981 and New York State Human Rights Law ("NYSHRL")

Section 1981 and the NYSHRL protect employees from unlawful discrimination and retaliation. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (retaliation); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (discrimination). While the NYSHRL historically mirrored the standards applicable under its federal counterparts, it was amended in 2019 to "be construed 'liberally for the accomplishment of the remedial purposes thereof,'" irrespective of the standards courts have applied to federal civil rights laws. *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123 (2d Cir. 2024) (quoting N.Y. Exec. Law § 300). The updated NYSHRL is interpreted "to align with . . . the more liberal pleading standard" applicable to the New York City Human Rights Law ("NYCHRL"). *Id.*; *see Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) (construing NYSHRL and NYCHRL claims together). Because the conduct

6

underlying Plaintiffs' claims occurred after August 12, 2019, the effective date of the NYSHRL amendments, we must apply this more liberal framework. N.Y. Exec. Law § 300; *see Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 665 n.1 (2d Dep't 2020) (noting that the "amendment was made to be effective August 12, 2019").

### A. Discrimination

Grant argues that the district court erred in dismissing his federal and state discrimination claims against GSSC, Mastrota, and Brown, in which he asserted that he was terminated from GSSC based upon his race. We agree.

To state a claim for race discrimination under Section 1981, a plaintiff must allege "(1) the plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (alterations adopted) (internal quotation marks and citation omitted). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (alterations adopted) (internal quotation marks and citations omitted).

Here, the parties dispute only whether Grant plausibly alleges an intent to discriminate on the basis of race. For this element, a "plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). "A showing of disparate treatment— that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of

7

discrimination for the purposes of making out a prima facie case." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks and citation omitted). "Due to the elusive nature of intentional discrimination," and because "clever men may easily conceal their motivations," a plaintiff "must often rely on bits and pieces of information to support an inference of discrimination." *Banks*, 81 F.4th at 258–59 (internal quotation marks and citations omitted). Accordingly, at the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84 (internal quotation marks and citation omitted).

Here the amended complaint plausibly alleges, when all the facts are construed most favorably to Grant, that Grant was targeted in such a way that raises an inference of racial animus. For instance, the amended complaint alleges that, during her first week of employment with GSSC, Mastrota stated that Grant "would be one of the first people fired and that firing would occur within three to four months." Joint App'x at 33. Moreover, "[w]ithout any knowledge of [Grant's] activities," Mastrota allegedly stated that he was "not busy enough," "unqualified," and "overpaid." *Id*. at 33, 35–36; *see Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 879 n.6 (2d Cir. 1997) ("Actions taken by an employer that disadvantage an employee for no logical reason constitute strong evidence of an intent to discriminate."). Plaintiffs allege that this behavior amounted to "labeling Mr. Grant incompetent, expendable[,] and the recipient of nepotism." Joint App'x at 34. In addition, as among GSSC's directors, Grant received the highest initial salary reduction of 40%, and generally, employees of color received salary reductions of at least 20% while the lowest reduction rate of 10% was received by a Caucasian employee. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (explaining that "[a] plaintiff

may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably").

Furthermore, according to the amended complaint, Mastrota also claimed to have demoted Grant because he did not have a supervisee. However, Mastrota removed his supervisee, while, at the same time, she allowed one of Grant's Caucasian co-workers, who also lacked a supervisee, to maintain her supervisory title and pay. Mastrota also allegedly reduced the pay of co-workers who defended Grant and worked with Brown to falsify a technology problem, for which they attempted to blame Grant. Moreover, Mastrota also allegedly singled out Grant at meetings for "not doing his job." Joint App'x at 36. Taken collectively, these allegations are sufficient to plausibly support an inference of unlawful racial discrimination. *See Vega*, 801 F.3d at 87 (explaining that, at the motion to dismiss stage, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge their claims across the line from conceivable to plausible.'" (alteration adopted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("The facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation.").[4]

---

[4] Plaintiffs contend that Mastrota's comments, warning Grant's co-workers to "be careful" with Grant because he "could get angry and destroy GSSC property," are "false and sounded in racist stereotypes about the 'angry black man' who slacks on the job." Appellants' Br. at 34. Thus, Plaintiffs argue, Mastrota's comments are "racial code words," which "may give rise to an inference of discriminatory intent." *Id.* at 35; *see Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 609 (2d Cir. 2016) ("[R]acially charged code words may provide evidence of discriminatory intent by sending a clear message and carrying the distinct tone of racial motivations and implications." (internal quotation marks and citation omitted)). In response, Defendants argue that the comments are not race-related and therefore do not evince discriminatory intent. Even apart from these comments, however, the amended complaint sets forth a plausible discrimination claim. Accordingly, we need not reach the issue of whether Mastrota's comments are racially charged code words.

To the extent that Defendants attempt to identify legitimate reasons for Mastrota's actions or argue that Mastrota's motivation for treating Grant differently was perceived nepotism, we emphasize that, at the motion to dismiss stage, "we are primarily concerned with whether there is minimal support for the proposition that the employer was motivated by discriminatory intent, and not with questions as to which the defendants bear the burden of production, such as whether there existed non-pretextual, nondiscriminatory explanations for the defendants' employment decisions." *Buon v. Spindler*, 65 F.4th 64, 85 (2d Cir. 2023) (alteration adopted) (internal quotation marks and citations omitted). Moreover, although Defendants suggest that the potential non-discriminatory motivations for the adverse actions make it impossible to plausibly allege that discrimination was the "but-for" cause of such actions, we disagree. "[E]ven under the more stringent 'but-for' standard, a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's [race] was one but-for cause of that decision, that is enough to trigger the law." *Radwan v. Manuel*, 55 F.4th 101, 131 (2d Cir. 2022) (internal quotation marks and citation omitted). As explained above, the amended complaint alleges, among other things, that Grant was demoted for reasons unrelated to his performance and was treated differently than other directors in terms of his salary reduction and differently than a Caucasian manager in terms of his title. These allegations plausibly plead that unlawful discrimination was at least "one but-for cause" of the adverse employment actions. *Id.*

Because Grant plausibly alleges a race discrimination claim under Section 1981, his NYSHRL claim must *a fortiori* also pass muster under the "more liberal pleading standard" applicable to claims brought under that statute. *Qorrolli*, 124 F.4th at 123.

In sum, we conclude that Grant plausibly alleges race discrimination claims under Section 1981 and the NYSHRL.

10

## B.     Retaliation

Plaintiffs next argue that the district court erred in dismissing their retaliation claims.  They argue that the amended complaint sufficiently alleges that Defendants terminated Plaintiffs because of their July 2020 Letter and, as to Flanagan, also because of his prior defense of Grant.[5] We find Plaintiffs' arguments unpersuasive.

To state a retaliation claim under Section 1981, a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (internal quotation marks and citation omitted).  A Section 1981 retaliation claim must allege "but-for" causation, meaning "that the adverse action would not have occurred in the absence of the retaliatory motive." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (internal quotation marks and citation omitted).  "The NY[S]HRL employs a similar but slightly broader standard: a plaintiff claiming retaliation must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Qorrolli*, 124 F.4th at 122 (internal quotation marks and citation omitted) (stating standard under the NYCHRL now mirrored by the NYSHRL).  The post-amendment NYSHRL standard for causation is lower than Section 1981's "but-for" standard:  it requires only that that the retaliatory conduct was undertaken "at least in part" because of "retaliatory motives." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (internal quotation marks and citation omitted) (stating standard under the NYCHRL now mirrored by the NYSHRL).

---

[5]  Plaintiffs do not argue that the reduction of Flanagan and Thompson's salaries constituted retaliation.

11

Assuming *arguendo* that Plaintiffs did not forfeit their NYSHRL retaliation claim by failing to defend it below and that the July 2020 Letter and preceding actions constituted "protected activities," we conclude that the district court properly dismissed the retaliation claims because the amended complaint fails to "set forth a causal connection between the protected activity and the adverse employment action." *Flanagan*, 2023 WL 6307362, at *6 (internal quotation marks and citation omitted). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

While "the question of what motivated an employer's desire to fire a worker is a quintessential jury function," *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020), Plaintiffs have failed to plead any facts, either direct or circumstantial, which plausibly suggest that the July 2020 Letter was a reason for their termination. To the contrary, the amended complaint asserts that, in response to the Letter, the Board conducted an investigation that led to Mastrota and Brown's departure and told Plaintiffs that they would not face repercussions for their reporting, that retaliation had no place at GSSC, and that they should not be afraid to speak out in the future. Beyond the conclusory assertion that "those statements were not true," Plaintiffs fail to present any allegations that would support an inference of retaliatory intent. Joint App'x at 53.

Nor have Plaintiffs alleged sufficient temporal proximity between the July 2020 Letter and the June 2021 terminations as to raise a plausible inference of retaliation. While there is no "bright line [defining] the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), the timeline alleged by Plaintiffs, without more, cannot plausibly support causation as a matter of law. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)

12

("temporal proximity must be very close" (internal quotation marks and citation omitted)). The alleged protected activity was not "closely followed in time by the adverse action" and the termination did not occur "at the first actual opportunity to retaliate." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127–28 (2d Cir. 2013) (internal quotation marks and citation omitted). As alleged in the amended complaint, several months after the investigation concluded, Plaintiffs requested that GSSC provide additional compensation, backpay, and reinstatement of their titles. During the ensuing negotiations, Plaintiffs proposed a separation agreement, and although both parties later indicated that they did not anticipate a separation, Plaintiffs were terminated shortly after the negotiations failed. By Plaintiffs' own admission, they were "subjected to the adverse employment action of terminat[ion] because they decided not to discuss settlement," not because of the July 2020 Letter. Joint App'x at 60. Although the negotiations related to Mastrota's prior employment actions, the amended complaint does not allege that the negotiations were themselves a protected activity or that they were an extension of the July 2020 Letter, insofar as it alleged discrimination. Thus, we conclude that the district court properly dismissed Plaintiffs' retaliation claims under Section 1981 and the NYSHRL.

## II.     False Claims Act ("FCA") and New York State False Claims Act ("NYFCA")

Plaintiffs argue the district court erred in dismissing their FCA and NYFCA claims because the amended complaint sufficiently alleges that Defendants retaliated against them for reporting, in the July 2020 Letter, that GSSC's CARES Act application contained false information. We disagree.

The FCA entitles employees to relief when they are discharged for engaging in lawful acts "in furtherance of [a civil action for false claims] or other efforts to stop [one] or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). "The NYFCA mirrors the federal FCA, and New York

courts look to federal law to interpret the state statute." *United States ex rel. Pelullo v. Am. Int'l Grp., Inc.*, 757 F. App'x 15, 17 (2d Cir. 2019) (summary order); *see* N.Y. State Fin. Law § 191(1) (entitling employees to relief if they are discharged for engaging in lawful acts "in furtherance of an action [for false claims]"). Although we have "yet to articulate a test" for these claims, we "have generally required a plaintiff to show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017) (internal quotation marks and citation omitted). Since 2009, the FCA's standard for protected activity protects conduct which "was intended and reasonably could be expected to prevent the submission of a false claim to the government." *Id.* at 96–97. The district court dismissed Plaintiffs' FCA and NYFCA claims because the amended complaint failed to plausibly allege that Plaintiffs engaged in a protected activity. Specifically, the district court determined that Plaintiffs failed to allege "sufficient facts to plausibly claim that the GSSC's CARES Act application contained false information" or that Plaintiffs' "activities were directed at exposing or deterring fraud on the government." *Flanagan*, 2023 WL 6307362, at *7. Notwithstanding Plaintiffs' arguments to the contrary, we agree with the district court. Nowhere in the July 2020 Letter did Plaintiffs assert that Mastrota submitted a "false or fraudulent claim" for PPP funds, let alone that she did so "knowingly." *Id*. The July 2020 Letter merely alleged that "by firing [GSSC] employees, [GSSC] may have to return a portion of the [PPP] funds," which "should be used to keep people working." Joint App'x at 84. It was not until the filing of the amended complaint that Plaintiffs alleged that the firings were "unethical and illegal" in part because the PPP funds were "earmarked for [the] specific purpose of retaining these employees." *Id.* at 43. Yet, even then, the amended complaint did not specifically allege fraud,

14

and it maintained that Yvonne Grant applied for the PPP funds, not Mastrota. In short, the allegations in the amended complaint are insufficient to plausibly allege a protected activity under the FCA or NYFCA.

In any event, even assuming *arguendo* that the submission of the July 2020 Letter constituted a protected activity, Plaintiffs' FCA and NYFCA claims still fail because, for the reasons discussed *supra*, the amended complaint does not plausibly allege that GSSC "took adverse action against [Plaintiffs] because [they] engaged in the protected activity." *Chorches*, 865 F.3d at 95.

Accordingly, the district court properly dismissed the FCA and NYFCA claims.

### III. New York State Not-For Profit Corporation Law ("N-PCL")

Finally, Plaintiffs argue the district court erred in dismissing their claim under Section 715-b of the N-PCL. We are unpersuaded.

The N-PCL requires non-profits like GSSC to "adopt, and oversee the implementation of, and compliance with, a whistleblower policy to protect from retaliation persons who report suspected improper conduct." N.Y. Not-for Profit Corp. Law § 715-b(a). Assuming without deciding that a private right of action exists under Section 715-b, the district court dismissed the claim because Plaintiffs' factual allegations "demonstrate[d] that Defendant GSSC had a Whistleblower policy in place and that the policy was adhered to." *Flanagan*, 2023 WL 6307362, at *5.

It is undisputed that GSSC adopted and implemented a whistleblower policy, but on appeal, Plaintiffs argue that GSSC did not oversee compliance with its whistleblower policy because the Board failed to thoroughly investigate Plaintiffs' complaints and later retaliated against Plaintiffs for whistleblowing, thereby demonstrating that the preceding investigation was conducted in bad

15

faith. Defendants counter that neither Section 715-b nor relevant case authority require an employer to undertake a *good faith* investigation. However, we need not address this legal issue or the threshold question of whether Section 715-b provides for a private right of action. *See Joshi v. Trustees of Columbia Univ. in City of New York*, No. 21-418, 2022 WL 3205883, at \*2 (2d Cir. Aug. 9, 2022) (summary order) (assuming that a private right of action exists, while noting the question has "divided New York courts"). Instead, we assume *arguendo* that Section 715-b provides a right of action, including for a bad faith investigation, and conclude that, for the reasons discussed *supra* in connection with the retaliation claim, the amended complaint fails to plausibly allege that Defendants undertook a bad faith investigation of the July 2020 Letter that resulted in retaliation against Plaintiffs for any whistleblowing activities. Therefore, the district court properly dismissed Plaintiffs' claim under Section 715-b of the N-PCL.

*      *      *

We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **VACATED** as to Grant's discrimination claims under Section 1981 and NYSHRL and **AFFIRMED** in all other respects, and the case is **REMANDED** for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court